## HUBLEY *against* KEYSER.

The object of the act of 13th March, 1815, was to make the sale for taxes, and treasurer's deed confer a title without proof of any one prerequisite, except that the land was unseated, and that a tax was charged by the Commissioners, regularly or irregularly, that this tax was unpaid, and the land sold and not redeemed within two years.

APPEAL from the Circuit Court of *Northumberland* County, held by *Gibson, C. J.*

This was an action of ejectment in which the heirs of *John Hubley* were plaintiffs and *Henry Keyser* and others were defendants.

The plaintiffs gave in evidence a warrant to *John Hubley* of the 31st March, 1774, for 300 acres of land, lying eastward of *Christian Wertz*, "bounded North by a large Ridge, South by the foot of *Mahanoy* mountain, including a quantity of land mostly timbered with *chestnut*, and including a *spring*, one of the heads of the west branch of little *Shamoken Creek*." Also a warrant of the same date to *Christian Wertz* "for 300 acres of land on the heads of the west branch of little *Shamoken*, near and above a survey

made for one *Knable*, adjoining the foot of *Mahanoy Moun-tain.*" On these two warrants surveys were made on the 15th July, 1774, and returned for patenting 12th March, 1785; on the *Hubley* warrant 315⅓ acres were surveyed, and on the *Wertz* warrant 346¼ acres. A patent issued to *John Hubley*, 17th March, 1785. Here the plaintiffs rested.

The defendant gave in evidence, a warrant to *James Brown*, dated 12th April, 1774, for 300 acres of land, "about eight or nine miles from *Sunbury*, to include a spring and adjoin the foot of big *Mahanoy* hill; the water of said spring runs into the Susquehanna in *Augusta township*," &c. Also a warrant of the same date to *Robert Atkinson* for 300 acres "adjoining lands applied for by *James Brown*, and to include *Bentz'* hunting cabin, and to include the path that leads from *Fort Augusta* to *Tulpehocken*, in *Augusta township*." Surveys upon these warrants, dated 15th July, 1774, by *Charles Stewart*, on the first of 346½ acres, and on the second of 321¼ acres, were given in evidence; upon the latter there was this indorsement: "May 8th, 1786, brought to the Surveyor General's Office by *Reuben Haines*." A deed from *Robert Atkinson* to *Reuben Haines*, dated 3d Aug. 1785, was then read. Under this title the defendants claimed. They also offered in evidence a deed dated 13th Aug. 1816, from *Henry Vanderslice*, treasurer, to those under whom the defendants claimed, which recited a sale for county taxes from 1806 to 1813, and for road tax from 1806 to 1812 inclusive. This was objected to. They then offered the 'tax book" from the commissioners' office; and to lay the ground for its admission, *John G. Youngman*, a clerk in the office, was called, who said: "This book was in the office, and was called the unseated land book: it was in the office when I was there: it is the original book in which the taxes for these years were entered. There might be another book of the sort for. *Shamoken*, but none for *Augusta* township. In *Augusta* the Commissioners taxed the lands without assessment:—we could not get the assessors to do it, as they could not find the land. I came into the office in 1818. The practice was the same before I came in." The defendants also, with the deed, offered in evidence a receipt for having paid the tax for which the land was sold, and for having given his bond for the residue of the purchase money. The objection was over-ruled and the evidence given. *Samuel Bloom's* evidence, which had been given before arbitrators at a former trial of the cause, was then read, the substance of which was, that the warrants under which the plaintiffs and defendants respectively claimed, were equally descriptive of the land in dispute;—that the land was seated in 1808, and has been so ever since;—that he was assessor of the township in which the land in dispute is, for the years 1806-7, and valued

the tract in the name of *John Hubley*, as a settled tract; there having been some labour expended upon it preparatory to a residence:—That he gave notice to the person who had done the work, of the valuation and rate of tax, previous to the appeal; when he was informed by him that he would not proceed with his improvement, as he understood there was an adverse title:—That he informed the Commissioners of this, and the tract was transferred from the duplicate of settled lands, to the unseated list.    The clerk in the prothonotary's office stated that he had made search in his office, and could not find that any bond to the commissioners had ever been filed before 1830, and that he could not find any bond applicable to this sale.    The defendants had been in possession for more than five years before this suit was brought.

Upon the first point, his Honor the *Chief Justice* charged the jury: That both the warrant of the plaintiffs, and that of the defendants, describe the land with reasonable certainty; and the plantiff's warrant being the elder, was entitled to the prior survey.    But the right to priority might be lost by negligence.    There was but one survey made; and the first question is for whom was it made?    If *Reuben Haines* procured *Charles Stewart* or his assistant to make it, he was entitled to the benefit of it; and *Hubley*, who in that case took no step to perfect his title, would be postponed. This is a question of fact for your determination.    If *Haines* had the survey made in fact, *Wm. Gray*, who succeeded to the office of Deputy Surveyor, had no right to return the survey for *Hubley*, and a patent founded on such fraudulent return would give no right.    The presumption is, that every officer does his duty; and as it would have been a breach of duty in *Charles Stewart* to return the survey on the younger warrant, if the older had been in his hands, the presumption is that it was not.    The evidence of the survey having been made for *Haines*, is the fact that the survey returned for *Haines* in 1774, on the *Brown* warrant, calls for this tract as *Haines'* by the name of *Atkinson*.    The testimony also of *Capt. Boyd* seems to shew the fact to have been so, by the concessions of *Wm. Gray*, not contradicted by *Hubley*.

As to the second point, he instructed the jury that the treasurer's deed, under the evidence in the cause, vested a good title in the defendants.    The jury found a verdict accordingly.

A motion for a new trial having been over-ruled, the plaintiffs appealed.

*J. Hepburn* and *Greer* for appellants.

The evidence of who procured the return to be made upon the respective warrants, was somewhat uncertain; the weight of evidence was that it was returned upon our warrant.    Whenever

(Hubley *v.* Keyser.)

there are conflicting rights in the hands of the Deputy Surveyor, they must be executed according to their priority. *Gray* v. *M'Creary*, 4 Yeates 494. *Duncan* v. *Curry*, 3 Bin. 14. *Maus* v. *Montgomery*, 15 *Serg. & Rawle*, 224. The defendant having entered no *caveat* against the return of our survey, but permitted a patent to issue without objection; and never having perfected his own title by a patent, it should now be postponed to ours. 2 *Smith's Laws*, 255.

An assessment is essential to the validity of a sale for taxes; for the act of assembly which requires that the assessor shall be an inhabitant of the township, and shall be sworn to perform the duties of his office, is a perfect nullity, if the commissioners may make the assessment in their office, as they have done in this case. It is proved conclusively by the witness called by the defendants themselves, and by the tax books, that the unseated lands were never assessed. But the treasurer's deed recited a sale for taxes for years, when it is admitted that there was a settlement and residence on the land; the taxes for seated and unseated lands cannot be blended so as to authorize a sale for the whole. The tax of seated land is not a charge upon it. *Burd* v. *Ramsey*, 9 *Serg. & Rawle*, 109.

The proof was uncontradicted, that no refunding bond, as is required by the act of assembly, was given and filed by the purchaser.

*Greenough* and *S. Hepburn* for appellees.

When the fact is conceded, that our warrants were equally descriptive of the land in dispute, with those of the plaintiffs; and the well settled principle of law is conceded, that priority may be lost by negligence, no difficulty can arise in the determination of the first point of this case. The law is admitted, and the fact was fairly left to the jury.

Whatever may have been the practice, with regard to the assessment of unseated land generally, in *Northumberland County*, as to this land, the proof is conclusive, that it was assessed by the assessor of the township for the years 1806-7. The 4th section of the act of 13th March, 1815, is a conclusive bar to the plaintiff's recovery. It is not pretended that the plaintiffs did within two years after the sale for taxes, tender the amount of the tax for 1806-7, (when they admit the land was unseated,) and the costs: nor did they pretend to shew, that the tax had been paid previously to the sale, "but in no other case," is the language of the act of assembly, "and on no other plea, shall an action be sustained." And in this position we are expressly sustained by the decision of this court in *Stewart* v. *Shoenfelt*, 13 *Serg. & Rawle*, 360.

(Hubley *v.* Keyser.)

The opinion of the court was delivered by

Huston, J.—This cause depended below, and in this court on some questions of description, in the warrants and survey; but there occurred another matter on which the cause turned, and as the former is ground much beaten, and on which little can occur that is new, I shall confine myself to one point.

*Samuel Bloom* proved that he was assessor of the township in which the land lay, and in the years 1806–7 valued the tract in the name of *John Hubley*, as a settled tract, there having been some labor expended on it preparatory to a residence; that he gave notice to the person who had done the work, of the valuation and rate of tax, previously to the appeal; when he was informed by that person that he would not proceed with his improvements, as he understood there was an adverse title; that he informed the commissioners of this, and the tract of *John Hubley* was transferred from the duplicate of settled lands, to the unseated list. No improvement was made on it for sometime after; it was sold for taxes, due for 1806–7, and some succeeding years.

The defendants had a warrant, and survey from the late proprietaries, and also a treasurer's deed, on a sale in 1816, for the title of the plaintiffs, and had been in the actual possession of the tract for more than five years before the commencement of this suit.

The plaintiffs called a *Mr. Youngman,* who had been clerk of the commissioners of *Northumberland* county, from the fall of 1818, for some succeeding years; he proved a book produced from the commissioner's office, to have been in the office while he was clerk, called "The Unseated Land Book," in which, are the lists of unseated lands in the respective townships, and the amount of taxes charged on each tract; and he stated that the situation of the unseated lands in all the townships except *Shamoken* was not known, and "we could not get the assessors to assess the taxes, and the commissioners assessed them themselves;" he stated that there were no other books in the office except that one, which showed the tax on unseated lands during the time he was there; and he added, *the practice was the same before he came into the office.*

This case was argued as if this last sentence of *Youngman* was absolute verity, when, in truth, it was either not evidence at all, or if admissible, was scarcely entitled to the slightest consideration. I admit the witness to be credible, and even respectable; but when any man testifies to what he does not and cannot know, except on hearsay, his testimony is only hearsay; and when contradicted by the evidence of a man who relates his own knowledge, his own acts, and those of others which he saw, it can weigh but little, if it ought to weigh at all. *Bloom,* a man of good character,

swears expressly, that he valued this tract in the years 1806 and 1807, and returned it to the commissioners, who inserted it in the list of unseated lands.     No assessment list of those years, or any preceding, are found in the office of the commissioners, nor of many of the subsequent years.     *Mr. Youngman* came first into the office in 1818; what was done while he was there, he is competent to testify; what was done twelve years before he was in the office, he can only know from report; and report is not evidence, except in specified cases; and then we must know, from whom it was heard. *Mr. Youngman* may have heard from the commissioners in office what had been done in their time; this would go back two or at most three years; did he ever inquire of the commissioners or the clerk of the commissioners ten or twelve years back?

The plaintiff did not show that he had ever paid any tax for this land, nor did he offer to pay any into court.

The expression in *Stewart* v. *Shoenfelt*, in 13 *Serg. & Rawle*, 363, and in all the opinions in that case, that the land must be un- seated, must be assessed, and the taxes unpaid, has been urged here as the solemn decision of the court, both in that and in subsequent cases, where the same words are used; and the distinction taken by the dissenting judge, who distinguished between an irregular as- sessment and a void assessment, has been urged as the law.    I will premise that the assessors value the land.    The commissioners al- ways decide how much tax is to be levied during the current year, and apportion it on the real and personal property according to the valuation; the whole process may perhaps be called the assessment of the tax; and each ought to perform the part, appropriated to him or them by law, in order to make a regular assessment of a tax. But there is at least one case in which the commissioners may, nay are commanded to impose a four-fold tax on lands never valued by the assessor; and of the existence of which the assessor had no knowledge.    See Act of the 20th of March, 1806, § 1.

It must also be remembered, that by the uniform decisions of the Supreme Court, on former acts, the sale *was void* for any and every failure of proof, that every step was precisely according to law; what was not proved to be strictly regular in every part was *void*: as respected a sale for taxes irregular and void were conver- tible terms.    The object of the act was to change the whole law, as established by decision, on this subject.

If you could not produce the election of assessors or commission- ers, or if their oath was not reduced to writing at the time, or ha- ving been written, was lost or stolen; or one out of a series of six- ty, in any one of three daily papers was lost, the sale was *void*.

In the case of *Stewart* v. *Shoenfelt*, the assessment would not, before the act of 1815, have been suffered to go to the jury—it

(Hubley *v.* Keyser.)

would have been no assessment—*a void assessment.* Yet there the sale was held valid; it was decided that a tax was assessed and unpaid, and the act of the commissioners was the only part of the assessment which was regular. The present objection was made in that case; that a valuation by assessors of another township was said to be *not irregular* but *void;* it was said the assessment there being without authority was no assessment. Chief Justice *Tilghman* says, "this argument is not without plausibility, but it is too subtle; it is against fact, for here the land was assessed by the assessor of *Porter* township, and it destroys the substance of the law." In another place he says, the object of the law was to give the owners of unseated lands a reasonable time to redeem the lands, and *cut them off* in case they did not embrace the opportunity within the given time. And the present *Chief Justice,* after speaking of former acts and decisions, says the act of 1815 was intended to provide a remedy which could not be eluded, by declaring once for all, that after the period of two years, the former owner should avail himself of no defect in the title where the tax was due, if it were assessed by *any one* having the color of authority: and again, if the land is unsold, and a tax is actually assessed under color of authority, nothing but proof of actual payment will affect the title of the purchaser.

I have said, that under the act of 1806, after all lands of which the Commissioners have knowledge, are valued by the assessors, and taxed by the Commissioners, if, within the year, the Commissioners discover any tract not returned by the owner, they at once must assess a tax four times as great as would have been imposed if returned. Must a bidder go and examine whether a tract offered for sale is taxed under this law, or under the general law? and if so, must he not inquire as to every previous step by the Assessors and Commissioners; and as any irregularity, nay more, any defect of proof that all was strictly regular, made the whole proceeding void, are we not now precisely where we were previous to 1815. There was before that law no medium; any defect of proof rendered all void:—it is idle then to pretend now to discriminate between irregular and void assessments. The object was to make the sale and deed confer a title, without proof of any one prerequisite, except that the land was unseated, and that a tax was charged by the Commissioners, regularly or irregularly; that this tax was unpaid, and the land sold and not redeemed within two years. Any other construction renders the act of 1815 a dead letter. If you could prove all that ingenuity could ask, the sale gave a good title before; and if you must prove all now, after two years, the act is useless—if you need not prove all, what must be proved? The only answer is, what the act requires, and no more. If the taxes have been paid, or

(Hubley *v.* Keyser.)

if the owner shall redeem within two years, in the manner prescribed, he shall be entitled to recover by due course of law, "but in no other case and on *no other plea* shall an action be sustained; and no *alleged irregularity in the assessment, or in the process, or otherwise,* shall be *construed* or *taken* to affect the title of the purchaser; but the same shall be declared to be *good* and *legal.*

Judgment affirmed.