## Gibson *against* Robbins.

If, upon a writ of foreign attachment, lands be attached, there is no necessity for a *scire facias*, but an execution may issue upon the judgment in the attachment suit and the lands may be levied and sold, and the purchaser will take a good title.

Although land may once have been seated and occupied, yet if it afterwards be abandoned, the fields suffered to grow up, and the fences to rot down, it may be assessed, taxed, and sold as unseated land by the county treasurer.

If the treasurer, upon a sale of unseated land for taxes, charge too much costs, and thus appropriate the whole amount of the purchase-money to the taxes and costs, whereas, upon a correct calculation, there would have been a surplus for which it would have been necessary for the purchaser to give a surplus bond; his not having done so, under the circumstances, will not defeat his title.

One who completes a settlement upon land, north and west of the Ohio and Allegheny rivers, under the act of the 3d of April, 1792, will not be required to continue and keep up his settlement with the same perseverance and vigilance that a settler upon land in other parts of the state would be bound to exercise. Yet his right being imperfect, and his purchase-money unpaid, if he quits the land for many years, refuses or neglects to pay any taxes or to exercise any other act of ownership, it may be referred to the jury as a matter of fact to determine whether he has not abandoned his title.

ERROR to the common pleas of *Crawford* county.

Robert Gibson against James Robbins. This was an action of ejectment for 200 acres of land. The parol evidence in the case, was exceedingly voluminous and contradictory, and a statement of it here would not be necessary to the understanding of any principle decided in the cause. These facts, which refer to the points decided, are sufficiently stated in the opinion of the court.

*Church* and *Pearson*, for plaintiff in error.
*Riddle* and *Derrickson, contra.*

The opinion of the court was delivered by

Kennedy, J.—The first error assigned, is an exception to the opinion of the court below, overruling the objection of the plaintiff in error, to the admission in evidence of the record, upon the offer of the defendant, of a writ of foreign attachment, sued out of the court below at the suit of Jacob Gehr against Thomas Burns, to November term 1805, and the proceedings had thereon, showing that the land in question, in this suit, had been attached as the property of Thomas Burns, and regularly sold in 1812, to Jacob Gehr. The principal objection to this record's being read in evidence was, that the land attached, appeared to have been sold without any *scire facias* having been previously sued out against the person in possession of the land, at the time, as garnishee.

[Gibson v. Robbins.]

Though it may be proper, and perhaps necessary, when the personal effects, or choses in action, belonging to the defendant in the writ of foreign attachment are attached, by virtue thereof that the party having charge of the same, or owing money or other valuable things to the defendant, that are intended to be attached, should be notified of the execution of the attachment, by the officer, yet there does not appear to be the same reason for requiring this, where real estate is attached under the writ. Personal estate, when attached, can not be converted into money by a sale thereof, without the officer's taking the actual possession of it. But this would be manifestly unjust before it is judicially ascertained that it belongs to the defendant in the writ of foreign attachment, and not to the party in whose possession it is found at the time of executing the writ; or when money or any other valuable thing, alleged to be owing by, or coming from, the party, notified of the writ of foreign attachment, to the defendant therein, is attached, it is very apparent that it would be unjust to require such party to pay the money or deliver the thing, whatever it may be, until it shall be first judicially determined that it is either owing by or coming from him to the defendant in the attachment. This, after it has been found by a judgment rendered in the attachment that the defendant therein is liable to pay to the plaintiff the money therein mentioned, is done by suing out a writ of *scire facias* against the party, in whose possession the personal property attached was found at the time, or who was notified that money or other thing owing by or coming from him to the defendant was attached, requiring him to appear on the return of the writ, and show cause, if any he had, why the plaintiff should not have execution to levy the amount of his judgment against the defendant in the writ of foreign attachment, out of the property and effects belonging to the same defendant, in his hands. Thus the defendant, in the writ of *scire facias*, who is called the garnishee, is furnished with an opportunity of establishing his right to whatever the plaintiff alleges to be in his hands, belonging or coming from him to the defendant in the writ of foreign attachment. Thus the plaintiff's right to have execution upon his judgment in the attachment, depends entirely upon the judgment that shall be rendered in the *scire facias*. If the judgment should be against him in it, his judgment in the attachment can avail him nothing: but if the judgment in the *scire facias* should be in his favor, he will be entitled to execution for the amount thereof to be appropriated to the satisfaction of his judgment in the attachment. But in seizing lands in execution, and making sale thereof, the officer, in doing so, does not take possession of them, so that if they be in the possession of a third person at the time, such third person is not disturbed thereby in the least; nor his title to the same, whatever it may be, affected by it in any way whatever. This may be tried afterwards, without prejudice, in an action of ejectment to be brought against him by the pur-

ix.—o*

[Gibson v. Robbins.]

chaser at the judicial sale. Hence, it would appear that there is not the same occasion for making the person in possession of land, when it is attached, a garnishee; and suing out a writ of *scire facias* against him, and obtaining a judgment thereon in favor of the plaintiff before he can have an execution to recover the amount of his judgment in the attachment, that there is for it, in the case of personal property or effects being attached. All the authorities cited by the counsel for the plaintiff in error, must be considered as applicable only to the latter case. Indeed, it is obvious, that if they were to be held applicable to the attachment of lands, no advantage could be derived to the plaintiff in the writ of foreign attachment, from attaching the unseated lands of his debtor, for want of a garnishee. This, of itself, would seem to be an insuperable objection to the doctrine contended for by the counsel for the plaintiff in error. We, therefore, think this error not sustainable.

We also think that the second error, which is an exception to the admission of the deposition of J. B. Bartholomew, Esq., in evidence, has not been supported. We can perceive no sufficient reason for rejecting it.

The third error, is an exception to the answers of the court to the first and third points submitted by the counsel for the plaintiff. On the trial, the defendant showed that the land in controversy had been taxed and sold as unseated land. To meet this, the plaintiff's counsel, in his first point, requested the court to charge the jury, that from the evidence, the land appeared to be seated, and not unseated at the time of the assessment of the taxes, for which it was sold; and that the sale was, therefore, void. And in their third point, requested the court to instruct the jury that the sale was void also, because it appeared that there was a surplus of the money arising from the sale of the land, after paying all the taxes and costs, and that no bond was given by the purchaser, securing the payment of it to the owner of the land, as required by the act of assembly. The court, as it appears to us, were right in refusing to instruct the jury, as requested by the counsel for the plaintiff on these points. On the first point, it appears from all the evidence on both sides, that the settlement, improvement, and cultivation of the land, under which the plaintiff claims it, were all given up and abandoned entirely, in May, 1806, and the land and all lay desolate from that time until 1819, when William Robbins, under whom the defendant claims, took possession thereof. The taxes for which the land was assessed as unseated, and afterwards sold in 1818, were made for the years 1814, 1815, and 1816. Before the assessment of these taxes, the house on the land, through lapse of time and other causes, had become untenantable, the fences destroyed by fire, and the clear land all grown up with briars and bushes, in such way, that in 1819, it was so bad, one of the witnesses testified, that he would rather have undertaken to clear the same quantity of the land on it, that never had been

[Gibson v. Robbins.]

cleared, than that which had. If land in such condition, even more unfavorable for being seated than before it was first improved, is not to be regarded as unseated land, it would be difficult, if not impossible to say, that it should ever become unseated again. And as to the third point, it appears, that according to the calculation and estimate made by the treasurer of the amount of the taxes and the costs accrued at the time of his making the deed, there was no surplus, consequently, no bond could be given for what did not appear to exist. But it is said the treasurer committed an error in taxing the costs, by making them double the amount of what they really were; so that there was in reality a surplus; and that the mistake of the officer, in this respect, will not excuse the purchaser from having given the bond for it, and make the sale valid without it. It was certainly the peculiar duty of the officer to tax the costs. He had the means of doing it correctly in his possession, whereas the purchaser had not; it would, therefore, seem to be nothing more than reasonable, that he should be entrusted with it, and confided in by the purchaser for that purpose. We are, therefore, of opinion, that the sale is valid, notwithstanding the treasurer may have committed the error imputed to him.

The fourth error is an exception to the answers of the plaintiff's second and fourth points. The plaintiff has no just cause to complain of these answers; they were as favorable to him as he, from the evidence, had any right to claim. The court appears rather to have erred against the defendant in their answers on these points of the plaintiff, for they left it, as a question of fact to the jury, to be decided by them, whether William Burns was not bound to have paid the taxes for which the land was sold, without a single tittle of evidence to justify it. It was claimed, to be sure, by the plaintiff, that the entry, in the handwriting of the county treasurer, in his book, " William Burns, to pay," was evidence of it; but it was a great mistake to consider this evidence against William Burns, for any purpose whatever. It can, at most, only be regarded as a private memorandum made by the treasurer, and not as a registry of any official act, and, therefore, without evidence being given, going to show that William Burns authorised him to make it, it proves nothing.

The fifth error is an exception to the answer given by the court to the eighth point submitted by the counsel on behalf of the defendant. By this point, the court were asked to charge the jury, that John Burns, quitting the possession of the land in 1816 and leaving it entirely vacant, permitting it to grow up like a wilderness again, without his or Gibson's, who claims under him, even paying taxes for it, excepting a road tax paid by the latter in 1809, until 1819, when the defendant, or the person under whom he claims, entered and took possession of it, and even then not asserting a claim or right to it, or against the latter's taking the possession of it; nor doing any act showing that he intended to claim it, after

[Gibson v. Robbins.]

1809 until 1832, amounted to an abandonment in law of all right and claim on their part, if they ever had any. The court did not instruct the jury that in law it was an abandonment, but left it to them as a question of fact, to decide whether the plaintiff had not abandoned his right and claim to the land. It is argued, however, that the court erred in this, because the plaintiff claimed by virtue of a settlement made under the act of the 3d of April 1792, which became perfect after a continuous personal residence thereon for the space of five years, and in clearing, fencing and cultivating, during that period, of at least two acres for every hundred intended to be claimed by virtue thereof. That having done all this, his personal residence thereon or cultivation of the same was no longer necessary; and that his right thereto became such as could not be abandoned by mere neglect, which was the most that could be imputed to him in this case. It may be that a person, after having completed a settlement under the act of 1792 upon lands lying north and west of the Ohio and Allegheny rivers, may not be required to continue and keep up his settlement on the land with the same vigilance and close continuity that a settler would be upon lands in other parts of the state. But still his right to the land must be considered as a very imperfect one, until he shall have paid the purchase-money for it to the state. Settlers had ten years from the date of the act within which they were not bound to pay the purchase-money to the state, but after the expiration of that period no further time was allowed. Under the act of 1792 the settler had a right to call upon the deputy-surveyor of the district within which his land lay, and require him to come and make a survey thereof, marking at the same time its boundaries, so as to have it designated and set apart from all other lands. Such survey is considered as official; and a registry of it being made and kept afterwards in the office of the deputy-surveyor and that of his successors, it enabled any one who was solicitous thereafter to know whether the land had been appropriated by a settlement and survey, to ascertain the fact by inquiry at the office of the deputy-surveyor of the proper district for the time being. So far as such survey may be considered evidence of the intention of the party for whom it is made to hold the land by settlement, it is wanting in this case on the part of the plaintiff. It appears no such was ever made. John Burns left the land without its being done. Besides, the purchase-money, if he intended to make the land his own, had become payable to the state some three years before he left this land. But it was shown that the plaintiff in right of Burns paid the road taxes on the land in 1809, and forwarded an application to the land office for a warrant for it. This is relied on to show that the land was intended to be claimed by virtue of Burns's settlement. This may be regarded as very satisfactory evidence that Gibson at that time did so intend to claim the land, and to make Burns's settlement the foundation of perfecting a title to it from the state; but as he stopped short there, without going farther,

ceased thereafter to pay taxes upon the land, paid no purchase-money to the state, and not even the least attention to the land itself, so as to keep it in repair, or have it fit for being used for any purpose whatever, but suffering it to grow up and to become perfectly wild again, and even more difficult of being cleared and improved for use again than it was at first; what possible benefit could the first settlement and improvement of the land be of to the state while thus neglected? Is it not evident that the whole object which the state had in view in offering the land for sale, upon condition of making first a settlement and an improvement upon it, and then paying the purchase-money within a limited period, was wholly lost and defeated? It appears to me that the negligence and want of attention, on the part of the plaintiff, to the land for so great a lapse of time, so as to suffer it to become perfectly wild again, were sufficient not only to amount to an abandonment in law, and ought to be so held by the court, but to warrant the jury in finding that he intended to abandon all his right and claim to it. We therefore think the court below committed no error on this point, that the plaintiff has any cause to complain of. Our opinion on this point seems to render the consideration of the remaining errors unnecessary; but if it were necessary to express an opinion in regard to them we would say, that there is nothing in them which would justify a reversal of the judgment.

Judgment affirmed.