# Frick *against* Sterrett.

The Act of 1815 on the subject of the sale of unseated land for the payment of taxes, was designed to give effect to the title without regard to irregularities in the mode of assessment or sale: and if a surplus bond was given, although for an amount which did not precisely correspond with the actual surplus, it will be attributed to the mistake of the officer, and will not vitiate the title.

If several unseated lots of ground be jointly assessed by the proper officer, and the tax afterwards apportioned among them by the commissioners, who order each to be sold separately, and they are so sold, this is but an irregularity which will not affect the title.

ERROR to the District Court of *Erie* county.

This was an action of ejectment for lot No. 1264 in the borough of Erie by Henry Frick against James M. Sterrett. The original

IV. — X *

title to the lot was in Henry Frick. The defendant claimed by virtue of a deed from the treasurer upon a sale for taxes; and to support it gave in evidence an assessment of four lots, Nos. 1264, 1267, 1268 and 1910, in the name of James M. Sterrett, for the year 1823, valuation $74, tax 15 cents: also the unseated land book, exhibiting lot No. 1264 in the name of James Sterrett, county tax of 1822, 3 cents; county tax of 1823, 3 cents; road tax, 6 cents: also the sale list, showing the sale of lot No. 1264 for the taxes of 1822, 1823, 12 cents; costs $3.87; amount sold for $4.81, to James M. Sterrett. The defendant also proved that all the records of the commissioners' office were burned in March 1823, and that no assessment for 1822 could be found. That the unseated land book was kept in the treasurer's office, and the entries therein made by the treasurer, from exonerations claimed by collectors, and allowed by the commissioners for the taxes on unseated lands, in their respective duplicates, and that it had been the general practice in Erie county to assess seated and unseated lands without, in the assessment, discriminating the one from the other, (as was the case of the assessment given in evidence,) and that the collectors claimed and were allowed exonerations for such unseated land tax as they could not collect, and the entries in the unseated land book were made from such exonerations. The defendant then proved that lot No. 1264 was unseated in 1822, 1823, and for many years after, and gave in evidence a deed from the treasurer of Erie county to James M. Sterrett for lot No. 1264, dated the 3d of August 1824; tax 12 cents; costs $3.87.

The plaintiff then proved by the prothonotary that he had made diligent search in his office for a bond from James M. Sterrett for the surplus of his bid beyond the taxes and costs on the sale of the lot in controversy, and that there was no such bond on file or to be found in his office. The plaintiff also proved that there were no supervisors in the borough of Erie until after their election was provided for by the Act of the 16th of February 1828, supplemental to the Act incorporating said borough.

The defendant's deed from the treasurer recited the fact that a surplus bond had been given by the purchaser.

The plaintiff requested the court to charge the jury, that the recital in the treasurer's deed was not sufficient evidence of the fact that a surplus bond was given, if none such could be found filed. That there being no law authorizing the assessment of a road tax in the borough of Erie at the date of this assessment, the surplus bond was for a sum less than the legal surplus, and therefore the sale was void. That the assessment being a joint one of four lots, the sale of this lot separately was void. That unless the lot was assessed and returned as unseated, the sale was void.

THOMPSON, President, instructed the jury that the recital in the deed that a bond was given, was sufficient evidence of the fact in the absence of proof to the contrary; and that the bond could not

[Frick v. Sterrett.]

be found in the office, was not sufficient to disprove it; that the sale for a county and road tax, although the road tax was illegal, was a mere irregularity, cured by the Act of 1815 : that the joint assessment, if the tax was afterwards apportioned and the lot sold separately, did not affect the title; that the evidence was sufficient to give the lot the denomination of unseated land, so as to justify the sale of it.

*Babbitt*, for plaintiff in error. It is very clear that this lot was assessed with a tax which was unauthorized by law, and sold for the payment of that tax: it follows necessarily that the surplus bond was not given for an amount equal to the actual surplus, and therefore the sale was as illegal as if made for the payment of a water tax or any other corporation tax. The assessment was of four lots jointly, lying in different parts of the town, while all the sections of the unseated land laws provide for the separate assessment and sale of each tract or each lot; and that this is necessary, is decided in 9 *Watts* 319. The book given in evidence was the treasurer's book, and it did not appear that this lot was entered as unseated by any competent authority, which is essential to the validity of the sale. 3 *Watts* 260.

*Walker, contra.* The proof was that this lot was unseated, and although the assessment may have been irregular, that will not vitiate the sale ; for it was the primary object of the Act of 1815 to avoid the effect of such irregularities and to preserve the title. 1 *Watts & Serg.* 328, 333. The same remark may be made with regard to the bond, that although it may not have been for the exact amount, this irregularity of the officer or his mistake is not to be visited upon the purchaser who has done all he was bound to do. 9 *Watts* 156.

The opinion of the Court was delivered by

SERGEANT, J.—The predominant policy of the legislature in passing the Act of the 13th of March 1815, for the sale of unseated lands for taxes, seems to have been to enable the counties and townships to raise a revenue for public uses, and to this other things are made subservient. Precise directions were given as to the mode of assessing, advertising and selling, and certain things are prescribed to be done by the public officers in that and other laws on the subject, which undoubtedly it is their duty to follow; but as the system was to be carried on by various county and township officers, changed frequently by public elections or appointments, and not always conversant with the necessary modes of carrying on complicated plans of taxation and sale, or sufficiently cautious to do it accurately, it was seen that these directions were not strictly pursued, and that loose, irregular and defective methods had been fallen upon in practice, often different in different

[Frick v. Sterrett.]

parts of the State. It was determined therefore by the legislature to yield to these irregularities—to consider the provisions of the law as directory merely—and not to impair the title of the purchaser on account of the neglects, imperfections, or malfeasance of the public officers in the discharge of their duty, but subject them in one instance to a penalty. It prescribes therefore in express and remarkably strong terms, that no alleged irregularity in the assessment process or otherwise, shall be construed or taken to affect the title of the purchaser, but the same shall be declared to be good and legal.

The struggle in all these cases of tax titles was an allegation of irregularity and non-compliance with the laws on the one side, and on the other a reliance on a substantial compliance with them, and in their decisions courts were often reduced to the necessity of overruling the tax title merely on account of some slight irregularity or deviation from the terms of the law. From this however they were relieved by the provisions of this overruling and sweeping clause. Many hard cases have occurred under it; but it is one of those instances in which it is considered expedient that individual mischief shall be submitted to in order to carry out a measure of public policy. And it may be further remarked, that it throws on the owner of unseated lands the exercise of vigilance in paying up his taxes with regularity or redeeming within two years; and it is a duty which, if he neglects, it is at the peril of having his unseated lands applied for the purpose of defraying the county and road rates and levies.

With these principles in view, it sufficiently appears to us in the present case, that although there have been irregularities in the sale and proceedings now in question, they do not avoid the tax title, but it remains in the words of the law, good and legal, notwithstanding.

1. It is said, that there being no borough officers of the borough of Erie, there was no authority to lay the road tax in 1815: therefore the sale so far as respected that tax, was void. And although the county tax was sufficient to authorize the sale, yet as the bond was for 6 cents less than it ought to have been, the purchaser has not complied with the law by giving a bond for the whole surplus. It is answered, and we think sufficiently, that this was the error of the borough officers or of some of the other authorities, which the purchaser was not bound to examine into. He gave the bond according to the requisition of the officers. It is such an error of the officers as will not affect the purchaser's title. *Gibson* v. *Robbins*, (9 *Watts* 156).

2. It is alleged that four lots were jointly assessed and one sold. This is true in the first instance; but it appears by the sale list under the commissioners' warrant, and the unseated land book, that lot No. 1264 was apportioned to James Sterrett separately, and ordered to be sold. It is true there is here irregularity—pro-

ceedings not consistent throughout — but nothing more. The assessment first made in a lump, is afterwards separated and apportioned, and from that time they are right enough.

3. *Owens* v. *Vanhook*, (3 *Watts* 260), is relied on as deciding, that unless it appears that the lot was placed by the commissioners on the unseated land list, its being there is without authority, and it is no evidence it was assessed as unseated. But in that case there was merely a paper produced without date, in which the collector of the year made a statement of delinquents from whom he alleged he could not collect the taxes charged to them, and it stated the lot to be vacant and unimproved. And in that same case there is a distinction made where the paper has been given to the commissioners, because the collector was exonerated, and they transferred the lot to the list of unseated lands. Now there were fair grounds to infer that was the case here. The lot was charged in the unseated land book, which it was proved was kept in the treasurer's office, and entries made by the treasurer, from exonerations claimed by collectors and allowed by the commissioners for taxes on unseated lands, and that the practice had been accordingly. Also, that the records of the commissioners' office were burned in March 1823, and no assessment for 1822 could be found, and that the lot was unseated. After a lapse of time, a sale may be supported, when the evidences of its regularity are lost and destroyed. The unseated land book is the usual document, and from it and the other proof after such a lapse of time and destruction by fire, the usual course of proceedings may be presumed. The mode of assessing unseated lands adopted may be considered as irregular, though ordinarily practised in this county, but it is one which the Act of Assembly cures.

Judgment affirmed.