## McCall's Heirs *versus* Anchors and Smith.

1. Where one has made a settlement on land west of the Allegheny river, and afterwards leaves it, the law will not presume an abandonment at the end of *four* years; and if, at the end of that period, and for several years immediately succeeding it, the land be assessed as unseated, and sold for taxes, in the name of the settler, the purchaser will be entitled to the claim of the improver.

2. Where a settlement, as required by law, has been made on land in that section, for five years, the commonwealth alone can take advantage of its *abandonment*; it cannot be alleged by an intruder, in defence of his own possession.

3. Where an official survey was made of land claimed by several settlers, and designating their several claims, including the portion in dispute, it is, as to it, a sufficient compliance with the act of 1792, requiring a settler to designate the boundaries of his settlement.

ERROR to the Common Pleas of *Butler county.*

This was an ejectment for 100 acres of land, by McCall and others, heirs of Archibald McCall, *vs.* Anchors and Smith. De-

W

[McCall's Heirs *v.* Anchors and Smith.]

fendants claimed by possession, taken in 1840. Verdict for plaintiffs.

The tract of land, of which the land in dispute is a part, was surveyed on 29th March, 1837, by Thos. H. Lyon, deputy surveyor, and contains 451 acres and 40 perches; which was given in evidence as the official survey of the whole tract. In the spring of 1799, Henry Murphy settled on the tract, but not on the part in dispute, and in July of the same year he left it. Some time afterwards, Eli Farr took possession of Murphy's cabin. Murphy soon after returned and disputed with Farr, and finally agreed upon a line, the part now in dispute falling to Farr, who built a cabin, raised some grain, and remained there till 1802. He agreed with Wm. Black for finishing the settlement, for which Black was to have 50 acres. Black went into possession of Farr's cabin and remained there till 1806, when he left, and the premises remained vacant, fields grown up and fences down until 1814. In 1810–11–12–13, it was assessed as unseated, and in 1814, it was sold for taxes, in the name of Wm. Black, and purchased by James Bovard, who sold it to Archibald McCall, 18th Sept. 1835. No person was in possession, or occupied the land, from 1806, till the defendant took possession in 1840.

The survey made by Thomas H. Lyon, deputy surveyor, in 1837, was an official survey, not only of the whole tract, but of this 100 acres for McCall; and the survey is thus entered on the deputy surveyor's book. He surveyed the whole tract, and then run off 200 acres to Wilson, 150 acres to Say, and 100 to McCall, and entered the survey on the county records; showing the division-lines run, and the names of the respective owners written within their parts, with the quantity of land each one was to receive.

Defendant alleges, 1st. That as Farr and Murphy made distinct settlements, they required distinct official surveys, and that the survey of 1837, of the whole, was not sufficient; and 2d. That the court should have left it to the jury, as a question of abandonment by Black; and that, in the event of the jury so finding, the plaintiffs, who purchased Black's interest, were in no better position than Black himself.

In 1814–15–16–17, the land in dispute was assessed to Black, and the taxes paid by Bovard. From 1818 till 1837, it was assessed to Bovard; afterwards to McCall.

On the trial, the following points were submitted on the part of defendants:

1st. That Black and Farr having left the land in 1806, and never having returned, and neither themselves or heirs afterwards having asserted any claim thereto, the rights of said Black and Farr were abandoned, and the plaintiffs are not entitled to recover.

2d. That unless the plaintiffs can show that the purchase money was paid to the commonwealth, the property being left for upwards

[McCall's Heirs *v.* Anchors and Smith.]

of eight years, the land was open to settlement by any other person who might take possession thereof.

The court charged, *inter alia*:—When *seated* land, whether the title is derived by warrant, or by settlement, ceases to be occupied, and is permitted to remain unoccupied so long that the fences are down, fields waste, it is abandoned so far as to be subject to be assessed with taxes as unseated land, and the taxes to be collected by the sale of the land by the treasurer; and the purchaser, at the sale for taxes, will be vested with such a title as will enable him to recover the possession of the land from intruders, if not redeemed by the owner.   The land is not abandoned, so as to be not subject to taxation, nor subject to entry and taking possession of it, without being specially granted by the commonwealth to the person taking possession.

And, in answering the second point, he charged:—When the settlement has been completed, and the settler has left the occupancy of it, and has not paid the purchase money, no person can take advantage of the non-payment of the purchase money, by taking possession of it, without an authority from the commonwealth. Since 1833, no title can be acquired by settlement: all titles to the vacant lands of the commonwealth are acquired by paying the purchase money, and obtaining a warrant, not by occupancy.

Errors assigned:

1st. That the court erred in receiving and treating the survey as an official survey of the land in dispute.

2d. The court erred in not submitting to the jury the question of abandonment, and in not charging the jury that, in the event of an abandonment, the purchaser at treasurer's sale would stand in no better position than Black himself.

The case was argued by *Purviance*, for plaintiffs in error.—At the time Murphy and Farr made the line between them, there had not been any official survey around the entire tract, nor has there been since any official designation of boundary or claim of the respective tracts.    They settled two tracts, and the survey of 1837 could not cover both of them.    It is the case of a scramble for possession, and a compromise by which each one takes a distinct possession, claiming by lines of their own, each having its own designation, which the survey of 1837 does not describe.

There being no official survey, then, of the tract in dispute, and the act of 1792 requiring a survey, the plaintiffs could not maintain this ejectment: Act 1792, *Dunlop* 192–3; also 2 *Yeates* 227; Dawson *v.* Laughlin, 2 *Bin.* 126.

The question of abandonment should have been submitted to the jury.    Farr and Black left the land, the one in 1802, and the other in 1806, and neither of them ever returned; and no possession

[McCall's Heirs *v.* Anchors and Smith.]

was taken of the land until taken by defendant, in 1840. From 1806 till 1814 no one even paid taxes for it, and, from the evidence, it is manifest that Farr and Black had left it without any intention of ever returning. If the land was abandoned, plaintiffs must stand in the shoes of Black. If once abandoned, no act, short of retaking of possession, could confer title on plaintiffs.

*Graham*, for defendants.—The abandonment of the *occupancy and cultivation of the land*, subjects it to assessment and sale as unseated land: Foster *v.* McDivitt, 5 *W. & Ser.* 359; Gibson *v.* Robins, 9 *Watts* 156—whether the title be acquired by warrant or settlement; but though the *possession and occupancy* be abandoned, the *title* is not, in either case: 5 *W. & Ser.* 360.

Here there was no offer to prove an abandonment in fact, and the time was too short to raise a presumptive abandonment, if such a principle even was applicable to the title of a settler under the act of 1792. Black left the land in 1806, and in 1810, '11, '12, and '13 it was assessed as unseated, and sold in 1814 to Bovard, who, or his vendee, continued to pay the taxes ever since. The title of Bovard is thus carried back, by relation, till the year 1810, only four years from the time Black left, which brings it precisely within the *facts* of the case of Gibson *v.* Robins, 9 *Watts* 156. That the survey was sufficient, cited 7 *Ser. & R.* 220, Morris *v.* Trevis.

The opinion of the court was delivered, Oct. 14th, by

COULTER, J.—Black, having completed the residence and settlement of five years, under the act of 3d April, 1792, relative to the sale of lands north and west of the Allegheny river, had acquired a substantial equity in the land.

Whether that would be considered as abandoned by an absence short of twenty years, or not, it is not necessary to decide in this case; because, even if it might be so abandoned, the settler would have an undoubted right to return, and resume his equity before any other individual had settled on the land, or the commonwealth, to whom it would revert, had granted it to any one else. Although Black did not return, yet it was assessed as his property, and sold for taxes; and after he had been absent for the space of six years, the taxing and selling it as unseated was perfectly justifiable, for he had left and abandoned the occupancy or possession, but not the equity: Foster *v.* McDivitt, 5 *W. & Ser.* 359; Gibson *v.* Robbins, 9 *Watts* 156. Black left the land in 1806, and in 1810, '11, '12, and '13 it was assessed as unseated, in the name of Black, and sold to Bovard, who regularly paid the taxes every year until he sold to McCall. Thus Bovard's title runs back till 1810, just four years after Black left, a period entirely too short to raise the legal presumption of abandonment, even if it was such an equity

[McCall's Heirs *v.* Anchors and Smith.]

as might be abandoned, in the absence of all proof of an actual or express abandonment in fact. Whatever equity Black had, was transferred to Bovard, who paid the taxes regularly until he sold to McCall, in 1837; since which time the taxes have been regularly paid by him and his heirs. On the 29th March, 1837, McCall procured a survey of the whole tract originally settled by Murphy, and subdivided by consent between these settlers. This survey was made by the county surveyor, as required by the act of 1792, and a draft of it filed in his office, on which he marked the subdivisions, setting off to McCall the one hundred acres he claimed under his purchase from Bovard. This survey was properly received in evidence, because it was precisely the survey directed to be made by the act of 1792. Thus, then, the settlement required by the act of five years was completed, and the survey directed by the act has been made, and the taxes regularly paid since 1810. If Black himself had returned and paid the taxes from 1810, and had a survey made in 1837, there could have been no pretence of abandonment; for the only settlement that he was bound to make, he had fully completed: and as all his equity was transferred by the treasurer's sale, there can be as little pretence of abandonment against the alienee.

The present defendant, who sets up this abandonment, never entered, or squatted, until 1840, when a good and valid equity, unabandoned, subsisted in the plaintiffs or their ancestor. The act provides, that the purchase money, with interest, shall remain charged on the land until paid, and that the commonwealth, if the settler or his alienee does not apply for a warrant in ten years, may grant a warrant to any other person, reciting the default of the first settler. The commonwealth has not granted the land to any other person, or forfeited the right of the alienee of the first settler, and the land remains charged with the purchase money and the interest since 1798. The court committed no error in not submitting the question of abandonment to the jury. There was no dispute about the facts; it was simply a question of law, whether the facts, not disputed or contradicted, amounted to a legal, or implied, or constructive abandonment, or not.

And the only two points put to the court by the defendant solicit an instruction that these facts did amount to an abandonment. When, therefore, the court negatived those points, it seems rather out of place to assign the answering them for error. The only question is, whether the answer was right or not. We think it was right.

As to the remaining error assigned for the admission of the survey in evidence, I have already said that it was properly admitted. Even if that survey had not designated and plotted off the separate allotments of the settlers, according to their agreed or consentible lines, it would have been good, because it would

have been a compliance with the act.    Their different shares could be adjusted when they applied for a warrant for their respective parts; or they might take a warrant for the whole, in the name of one of the settlers, and adjust their proportions afterwards. The survey, as made, was a compliance with the act.

Judgment affirmed.