## Case No. 8,507.

### LORD v. MILWAUKEE & M. R. CO.

[17 Wis. 588 (570) note.]

Circuit Court, D. Wisconsin. 1863.

TAX DEEDS—EFFECT AS EVIDENCE—CONSTITUTIONAL LAW—EJECTMENT.

[1. The Wisconsin statute of April 19, 1852 (Laws 1852, p. 783), making a recorded tax deed conclusive in regard to any errors of officers in levying taxes and selling lands to enforce payment, was within the constitutional powers of the legislature.]

[2. A tax deed made in pursuance of a sale under the Wisconsin act of April 19, 1852, being conclusive evidence of the regularity of the proceedings, the prescribed notice of redemption is to be regarded as merely directory, and the court is not to inquire whether such notice was regular or not. But as to tax deed made pursuant to sales had prior to the passage of that act, they are only prima facie evidence of regularity, and thence may be declared void for want of a lawful notice of redemption.]

[3. To enable a plaintiff in ejectment to recover on a tax• deed lands originally held by the United States, it must be shown that the land was sold by the United States before it was taxed, but it is not necessary that a patent should have issued.]

MILLER, District Judge (after citing the provisions of the acts of April 19, 1852,

[2] [From 5 Cent. Law J. 325.]

March 31, 1853, and March 31, 1854): By the act of 1852, under which the sale of this lot was made, the deed is conclusive in all courts that the proceedings have been regular, from the valuation of the land up to the execution of the deed; and also of the existence of all conditions precedent in any way affecting its validity. And there is only left to the owner of the land the right to contest its liability to taxation; to prove the payment of the taxes for which the land has been sold; and to prove the redemption of the land, after the sale, and before the recording of the deed. All defense against a deed is cut off, excepting in these three particulars, in regard to which the purchaser, by the deed, acquires but a contingent title, liable to be defeated by proof of any one of them. If the land described in the deed was the property of the United States at the time of the assessment, the whole proceeding and deed would be void. The power of taxation resides in the government, as a part of itself. It is granted by all, for the mutual benefit of all; and it operates on all the persons and property in the state. The predominant policy of the legislature, in passing the act of April 19, 1852, is to secure the collection of revenue for public uses. The precise directions given in the law, as to the mode of assessing, advertising and selling, and all other things prescribed to be done by the public officers, should be followed strictly and substantially, although they are but directory. As the system was carried on by various officers, changed frequently by public election, and not always conversant with the necessary modes of carrying on complicated plans of taxation and sale, or sufficiently cautious to do it accurately, it was seen that these directions were not strictly pursued, and that loose, irregular and defective methods had been fallen upon in practice. It was determined therefore by the legislature to consider the provisions of the law as directory merely, and to protect the purchaser against the neglect, imperfections and malfeasance of public officers. The act therefore prescribes in strong terms that the deed shall be conclusive in the hands of the grantee as to all things in their character directory. While the door was open for the legal owner to contest the proceedings, they were considered essential; and the courts, in their decisions, were reduced to the necessity of overruling the tax title merely on account of some slight irregularity or deviation from the terms of the law. From this they are relieved by the overruling and sweeping provisions of the act of April, 1852. Many hard cases, no doubt, will occur under this law; but it is considered, by the representatives of the people, expedient that individual loss should be submitted to in order to carry out a measure of public policy. If the owner will not exercise the ordinary vigilance required by law in paying his taxes,

or in redeeming his land within the time allowed, he neglects a duty at the peril of having it applied for the purpose of defraying the expenses of government. Every person, whether resident or non-resident, who owns land located in this state, knows that it is subject to taxation, and to sale for the payment of taxes annually assessed. He is presumed to know the times prescribed by law for the sale of his land and for its redemption, and also the conditions of the sale and the effects of non-redemption. Ignorance of the law should not in this matter excuse a man. The legislature has, after much imperfect legislation, adopted the wise policy of requiring the owners of lands to pay the taxes annually assessed thereon, and thereby contribute punctually to the support of the government. Land is wisely made the debtor of the taxes, and subject to a statute lien, to be extinguished by a summary proceeding in rem, whereby the title of the owner is divested upon neglect to redeem, after the long time allowed by law for that purpose. A due regard to the interests of the tax-paying citizen, and to the improvement of the state, required the enactment of the law; and the courts should enforce it, as to sales made subsequent to its publication. .

The law of Pennsylvania provides that "no alleged irregularity in the assessments, or in the process, or otherwise, shall affect the title of the purchaser; but the same shall be declared to be good and legal." In that state taxes are a lien only on unseated or vacant lands and lots, and such only can be sold by the treasurer. The courts of that state have enforced that statute provision with such uniformity of construction that a treasurer's deed of lands not redeemed is considered an undoubted muniment of title. In Stewart v. Shoenfelt, 13 Serg. & R. 360, it is decided that the assessor of one township has no right to assess lands lying in another township; but if he does so, and the land is sold for payment of the taxes, the sale is not void, and the purchaser is protected. In Thompson v. Brackenridge, 14 Serg. & R. 346, it is decided that the omission of the notice of sale required by the law does not vitiate the deed. The court says: "Returning periods of sale are fixed by the law, and owners are therefore apprised by the law itself that their lands will be sold at the regular period if the taxes are not paid." In Hubley v. Keyser, 2 Pen. & W. 496, the court says: "The object of the law was to make the sale for taxes and treasurer's deed confer a title, without proof of any one prerequisite, except that the land was vacant, and that a tax was charged, regularly or irregularly; that the tax was unpaid; and that the land was sold, and not redeemed." In Strauch v. Shoemaker, 1 Watts & S. 166, it is decided that when vacant land is sold for the payment of taxes the title of the real owner, whatever it may be, passes to the purchaser, whether it be assessed and sold in his name or that of a stranger; and whether the person in whose name it is taxed has or has not any title. And in Fager v. Campbell, 5 Watts, 288, the court says: "The land itself, and not the owner of it, is the debtor for the public charge; and it is therefore immaterial, at the moment of sale, what may be the state of the ownership, or how many derivative interests may have been carved out of it. With these the public have no concern. They are sold with the land, just as a remainder would be sold with a particular estate." And in Frick v. Sterrett, 4 Watts & S. 269, the court ruled that the act on the subject of the sale of vacant lands for the payment of taxes was designed to give effect to the title, without regard to irregularities in the mode of assessment or sale.

On the subject of redemption under the law, the court, in Orr v. Cunningham, Id. 294, ruled that the right to redeem is exclusively in the owner; but, if the land be actually redeemed by another, it will enure to the benefit of the owner; and vest no title in him who redeemed it, although he may have been a claimant of the land at the time. In Laird v. Heister, 12 Harris (24 Pa. St.) 452, the court says: "When the owner of land goes to the treasurer and offers to pay him all the taxes upon it, and does pay him the amount demanded, and the treasurer credits the payment to another tract and sells this, it is a good payment and the sale is void. The unseated land laws are intended to enforce the payment of taxes, and their purpose is fulfilled when the duty is performed. If a man has actually and in good faith performed his duty to the satisfaction of the proper officers, his land is safe. If it is sold after that, it is through the error of some officer, which cannot be visited on the owner; for the state does not mean that the owners shall warrant the fidelity or competency of its officers. The sale involves an assertion by the treasurer that the taxes are unpaid, and the purchaser relies on this or on his own investigations, and his title depends upon its truth." And in the case of limitation, the same court, in Burd v. Patterson, 10 Harris (22 Pa. St.) 219, decided that the owner was barred, though his agent had been informed by the treasurer, before the sale, that the taxes on his lands had been paid. There was no offer to pay the taxes; and, where either the owner or purchaser must suffer, the loss should fall on the former, who neglected to pay his taxes. The supreme court of the United States, in Dubois v. Hepburn, 10 Pet. [35 U. S.] 1, which was a case involving the right to redeem under the Pennsylvania statute, says: "A law authorizing a redemption of land so sold ought to receive a benign construction in favor of those whose estates will be otherwise divested."

I have referred to these few cases, selected

from many on the same subject, to show how a law similar to the act of April, 1852, has been enforced, and the principles on which it is administered. The law of Pennsylvania has been in force forty-two years, and I am not aware of a case wherein its constitutionality is doubted by the courts. In my opinion, the legislature of Wisconsin had the same constitutional power to pass the act of April, 1852, making a recorded tax deed conclusive in regard to errors of officers in levying taxes and selling lands for their payment, as to declare by law that no pursuit or proceeding for the recovery of lands sold for taxes shall be commenced after three years from the time of recording the deed.

In all cases it is the duty of the court to enforce the constitutional laws of the state; particularly those that regulate and control the titles to property. In conformity with this principle, I have decided, in this case, that under the law in pursuance of which the sale for taxes assessed in the year 1848 was made, the deed, being but prima facie evidence of the regularity of the proceedings, is void for want of a lawful notice of redemption. And as, by the law of April 19, 1852, "deeds shall be conclusive in all courts that the proceedings have been regular, from the valuation of the land up to the execution of the deed, and of the existence of all conditions precedent in any way affecting the validity of the deed," with the exceptions mentioned, I now decide that the prescribed notice of redemption is merely directory, and that a deed made in pursuance of a sale under this law is conclusive; and the court is not to inquire whether the notice of redemption was regular or not. The design of the act of April, 1852, is to place tax deeds, in regard to their conclusiveness, on an equality, as near as may be, with deeds of lands sold under execution by sheriffs. The legislature has power to create liens upon lands by mortgage and judgment, and also a paramount lien by taxation. And it can constitutionally provide for the extinguishment of those liens by sale of the incumbered premises, and transfer of the title to the purchaser. In either case there is a proceeding according to law, sufficient to divest the owner of his title, and to protect the purchaser against irregularities or errors of officers.

The court seeing the law of April, 1852, upon the statute book, and recognizing it to be a law in relation to titles to property, will enforce it. And this deed, being made in confirmation of a sale under that law, and recorded, is to be received in evidence as a muniment of the plaintiff's title; provided the execution is correct, and the title to the land be shown out of the United States. To enable a plaintiff in ejectment to recover on a tax deed, it must be shown that the land was sold by the United States before it was taxed; but it is not necessary that a patent

should have issued. Carroll v. Safford, 3 How. [44 U. S.] 441; Crum v. Burke, 1 Casey (25 Pa. St.) 377.

[In 17 Wis. 588 (570), this case is published as a note to Smith v. Cleveland.]