## Owens *against* Vanhook.

In order to the validity of the sale of a town lot for taxes, it must have been assessed as unseated, or returned by the collector as unseated, and transferred by the commissioners to the lists of unseated lands.

ERROR to the common pleas of *Fayette* county.

This was an action of ejectment by Vincent Owens against Isaac Vanhook and Elisha Hunt for a lot of ground in the town of Bridgeport. In the year 1815 the property in question was assessed as a house and lot for a tax of 42 cents, as the property of Elisha Crane, and was put into the collector's duplicate of seated lands. The assessor was called as a witness, and proved that the lot was vacant and unimproved in 1815. In 1822 the lot was sold by the treasurer for the tax of 1815, and purchased by the commissioners, who sold it in 1828 to the plaintiff. The duplicate of 1815 was in evidence, and also a paper without date in which the collector of that year made a statement of delinquents from whom he alleged he could not collect the tax charged to them severally; among these was the name of Elisha Crane; and the paper stated that the lot was vacant and unimproved. It did not appear that the commissioners acted on this paper, or exonerated the collector from any part of the taxes charged in the duplicate. There was no evidence that this lot was ever inserted in the list of unseated lands. The defendants' title was regularly deduced from Elisha Crane to the defendants. The court below (Baird, president) was of opinion, under these circumstances, that the plaintiff was not entitled to recover, and so instructed the jury, who found a verdict accordingly.

*Ewing*, for plaintiff in error.

[Owens v. Vanhook.]

The opinion of the Court was delivered by

HUSTON, J.—The laws authorize the commissioners to sell *unseated* lands where the taxes are not paid; but no other than *unseated* lands can they sell. The witnesses testified this lot was *vacant* and *unimproved*. What will be decided to be unseated lands, may be the subject of judicial decision sometime. It happens that lots in a town are sometimes enclosed by a fence, though no house is on them; that outlots near a town are enclosed, though no house is on them: these are sometimes cultivated in grain; often used for pasture; but no person resides on them. These have heretofore been taxed as seated, and the tax collected from the person who used them for any purpose; and I apprehend they could in no sense be called or taxed as unseated land; nor could a lot used as a lumber yard or the like, though no fence be round it. This is my own opinion at present; but the facts in this case do not raise the point; for it does not appear whether the lot in question was enclosed by a fence, or ever had been before 1816; nor does it appear why the assessor now swears it was vacant and unimproved, and yet in 1816 assessed it as *a house and lot.*

Our acts of assembly make a marked difference in the mode of collecting the tax on seated and unseated land. The duplicate containing the names of the inhabitants of a township, and the amount charged to each, is given to a collector who is authorized, after a demand and neglect to pay within thirty days, to collect the amount by distress and sale of goods; or for want of goods to take the body of the delinquent and commit him to prison. Although by the agreement the landlord is to pay the taxes, yet they may be levied from the goods of the tenant, who may deduct the amount from his rent, or recover it by suit from his landlord. By the act of the 11th of March 1822, the power of the collector is continued for three years from the date of his duplicate, in the same manner, and with like effect as during the year mentioned in his warrant; but no where is the tax on seated land made a lien on the land itself. Nothing importing any such thing has ever been enacted, or if it has, I have not found it.

As to unseated lands, the case is widely different: they are valued by the assessor, and the tax imposed in the same manner as other property; but they are not put in the duplicate given to the collector. They are to be paid, not to the collector of the township, but to the county treasurer; and if not paid, there is no personal responsibility of the owner, but the lands themselves are bound for the tax, and to be sold in the manner prescribed by law, if the owner does not pay the tax. While the same person continues owner of land, it may be less material whether it is taxed as seated or unseated, or that it be transferred from one list to the other; but to a purchaser it may be most material; if taxed as unseated lands, he can *discover that* by application to the treasurer, and retain the amount out of his purchase money to meet the lien; if not in the list of unseated lands, the

[Owens v. Vanhook.]

taxes, though unpaid, are no lien. To change property from the seated to the unseated list, after a purchaser had paid his money, would then be most unjust as respects him ; but there is another objection to this proceeding. There is no evidence that ever this lot was in the list of unseated lands ; it was not so assessed or taxed in 1815, or any subsequent year. How then was it sold as unseated ? A paper without date, not acted on by the commissioners, not verified to be true by the oath of any person, is found in the commissioners' office. It is contended this paper was given to the commissioners in 1815, because the collector is allowed to apply to be exonerated from taxes within the year, upon showing that he cannot collect them. If this was so, and the commissioners of that year had exonerated the collector, and had transferred this lot to the list of unseated lands, there would have been more colour of right; but there is no evidence that they did either exonerate him or transfer it to the unseated list ; if either had been done, their books would have shown it. In point of fact, however, few collectors settle and pay their duplicates within the year, and most of them do not for many years. The commissioners, too, do often grant exonerations after the year has expired ; and we have nothing to show that this application was not made for exoneration in 1822, and then the property advertised as unseated land. I say this is the fair inference from the evidence, but I do not put the cause on that ground. The commissioners cannot change land from the seated to the unseated list so as to affect an innocent purchaser ; much less can they sell as unseated land a property which was taxed as seated, and never transferred to the list of unseated lands; never taxed as unseated; which the owner could not find in that list if he had inquired, and which was to be found among the seated lands in 1815, and every subsequent year.

The power to sell lands for taxes unpaid is confined to unseated lands ; no act of assembly on the subject mentions any other. In Hubley *v.* Keiser, the assessor seeing that some work had been done on a tract of woodland, at first entered it as seated ; but he went to the person who did the work and was informed the design of settling on it was abandoned. The assessor informed the commissioners, and he and they charged it to the unseated list before the tax was apportioned, and it continued in that list till it was sold; but after it is assessed and the tax apportioned to it, the assessor and commissioners of any succeeding year have no power to change it; much less has the collector. There has been no disposition in this court to contravene the letter and spirit of the acts for enforcing the payment of taxes on unseated lands ; but we must confine their operation to cases within them. We think this case is not within the purview of any or all of them, and therefore affirm the judgment.

Judgment affirmed.