4ws338
f197 528

## Smith *against* M'Grew.

A town-lot cannot be assessed and sold by the treasurer when either the person of the owner or his property might have been taken for the payment of the taxes.

ERROR to the District Court of *Allegheny* county.

J. H. Smith against John M'Grew. This was an action of ejectment for a lot of ground in the borough of Allegheny. The plaintiff claimed under a title derived from the treasurer upon a sale of the lot as unseated for taxes. The defendant held the original title. The only question in the cause was whether the lot was the subject of sale as unseated. The evidence was not brought up, and *nothing* more appears than is contained in the opinion of the court. The cause was argued by

*Dunlop*, for plaintiff in error.
*Hampton*, for defendant in error.

The opinion of the Court was delivered by

HUSTON, J.—This was an ejectment for Lot No. 48, of 22 feet front on Lacock street, in the city of Allegheny, and in depth 120 feet to Centre alley. After some previous deduction of title, there was read a deed from Isabella M'Donald to William Tait, dated 14th of December 1834, and recorded on the same day. There was also a deed from Tait to John M'Grew, the defendant, acknowledged 1st of April 1836. On the 3d of December 1835, a warrant issued to the assessor of Allegheny borough, returnable in 30 days, but it does not appear when returned. On it appears "Tait, Lot 48, vacant, 22 feet on Lacock street." The pen is drawn through this, and there is written under it "Lot 48, 22 feet on Lacock street, vacant." The word "vacant" is in different ink, and in small letters.

It was stated that in this county there is no unseated land book in the commissioners' office, no separate lists of unseated lands, but that seated and unseated are put promiscuously in the same assessment, and given to the collector in the same manner in his duplicate, to be collected by him. There is perhaps one other county, (Schuylkill), in which they proceed in the same way. The counsel here read to us sundry sections of the Act about county rates and levies, passed 15th of April 1834, which have no reference to unseated lands whatever; I mean to the mode of collecting taxes on them. The Act of 1799 treats of them in some sections promiscuously; but the Act of 3d April 1804, as regards the enforcement

[Smith v. M'Grew.]

of payment, separates them entirely; the collector is to demand and receive or enforce payment by sale of goods or imprisonment of the body, when the lands are seated. This is the duty of the treasurer, by sale of the lands, when they are unseated; and sundry Acts have passed to regulate the proceedings. The Act of 3d of April 1804 relates solely and exclusively to unseated lands; its title is so, and all its provisions, although the word unseated is not always inserted before the word lands. The first section, if applied to both seated and unseated lands, would be an absurdity. No surveyor alive in 1804 or now could furnish any list of the seated tracts with all their divisions and subdivisions. No commissioners ever asked, and no surveyor ever attempted to do any such thing. The deputy-surveyors could furnish material information as to the unseated lands surveyed, but not settled. The assessor was bound to go to every inhabitant for information as to his real property in possession, and his personal property. The assessor was not bound to know or to seek for the owner of unseated lands.

The book directed to be made and kept by the commissioners is the unseated land book, and such a book ought to be kept in every county in the State; and I have only heard of two, where there are any unseated lands, in which there is not such a book. The number of tracts in it lessens very fast as the settlements increase. To that book the owners of unseated lands go to ascertain the taxes due; from that book, or often from a transcript of it, the treasurer collects taxes and sells lands on the warrant of the commissioners. A transcript of the unseated lands in his township is sent to the assessor, whose duty it is to strike out such as are settled, and insert them on the list of settled tracts with the name of the person residing thereon. It is a misfortune that those who draw up our laws do not always understand the subject. The assessor is to complete and return his assessment in 30 days. This is not done in one case out of four, and in some townships, and some weather, is impossible; but this does not make the assessment void nor perhaps even voidable. Another provision is, that the collector shall collect and pay over all the money within three months, and then to receive exonerations for taxes uncollectable. Not one collector in a thousand collects the whole amount of his duplicate in a year, and it is not necessary nor even proper that he should do it in three months. The tax is to be used through the whole year, and it would be useless and oppressive to enforce now what will not be wanted for nine or twelve months; and almost universally his allowance for indigent persons and such as are not found is made at or after the end of the year. In this case the allowance was made 1st of March 1837.

The counsel in this cause went over a wide range, and cited many cases, the connection of which with the real dispute in this case is not easily seen; most of the cases related to tracts of land in an unsettled part of the respective counties, and if not occupied

[Smith v. M'Grew.]

as a place of abode or cultivated for subsistence, there was no alleged, nor perhaps any possible ground on which to say they were not unseated lands. The nature of the property and the uses made of such tracts of land and of town lots is very different. We had this day before us a case in which there was a lease of property with no house on it for $600 a year for a board-yard. It would not be easy to persuade a court or jury of common sense that a lot with property on it which would produce such a rent could be sold as unseated land for taxes. Some very large manufacturing establishments in Allegheny and this city cover the whole lot, or more than one lot, and yet no person lives with a family or eats or sleeps on the lot. Though the machinery and personal property on it are of great value, common sense would revolt at treating them as unseated. The counsel seemed to suppose the court in the different cases he cited had been endeavouring to fix on some one thing which would in all cases decide whether a property was seated or unseated; and that the opinions had varied at different times. I doubt whether the judge who delivered the opinion in any case about a tract of land thought about a lot used for a board or coal or brick-yard, or expected his words would ever be supposed to apply to a case respecting such property. The amount of the cases seems to be, that if there is personal property which can be levied, or a person who can be taken for the tax, the land is not liable to be sold.

The case of *Harbeson* v. *Jack*, (2 *Watts* 125), takes a liberal and extended view of this subject. In the more immediate view of the legislature, by unseated, was meant land in a state of nature. But it was said we go far enough, if we allow a tract once cultivated, but so long and so clearly abandoned as to show there is no ground to suppose an intention to resume the occupancy, to be treated as unseated. In that case, for some months before, and at the time of the assessment, there was no occupant, but a tenant went on it the next spring, and the sale was held void. In *Keating* v. *Williams*, (5 *Watts* 382), a man became insolvent, and no assignee would act for a long time, and a lot and house were taxed as unseated and sold, and the purchaser lost his money.

As the Act of 1815 was intended to cure irregularities in assessment, I would be unwilling to say the mode pursued in this county rendered all their sales void. But if they will put their unseated land in the collector's duplicate, the consequence follows, that if he can find a person on the land, or personal property on it, he must collect the tax from the property or the person, and he cannot return as vacant or unseated a lot on which there was property, and has been up to the sale, and the owner or his hands working on it all the year. By a little skill a person who wishes to get property for nothing, can find people who cannot remember what they saw or where they saw it. But others, from their connection with or vicinity to this property, have either perjured

[Smith v. M'Grew.]

themselves or there was not even a plausible ground for calling this either a vacant or unseated lot when it was assessed, and clearly not so when and after the duplicate was put into the hands of the collector. A man who went into partnership with M'Grew as a chairmaker saw stuff put on the lot in the fall of 1835, a shop built in March and used for painting. Though M'Grew's deed was not acknowledged till 1st of April, nothing is more common than to contract and enter some time before the deed is made. There were much more materials for their trade put on the lot in the spring of 1836; and the man who lived on the adjoining lot swore there had been property on it and occupancy of it from that time to the trial; and other witnesses fully corroborate them; and no one directly contradicted this. It was perfectly immaterial if at times there was more or less stuff on the lot, or a fence round it or not. The collector or commissioners could not, on the 1st of March 1837, make this either a vacant or unseated lot. There was occupancy and property; and no mechanic's shop can be sold as unseated when his stuff is in it and he and his hands using the shop as often as they are engaged in a part of the trade, as painting is a part of a chairmaker's trade. The judge was right in saying the assessment of *this lot* as unseated was void. As far back as *Cox* v. *Grant*, (1 *Yeates* 164), we find it said, " a sale of land for taxes cannot possibly be good if there is personal property enough on the premises which might have been distrained;" and the fact of personal property or personal responsibility being sufficient to prevent a sale of the land, is the doctrine from that to this time. Before the Act of 1815 the decisions turned on minute observances; and we do not yet always look at the questions in these cases on the same extended and fair views of the spirit of the law and the justice of the case which are applied to other cases. Where the owner or the owners' moveable property is on a lot, no observance of the form of the law ought to enable a greedy neighbour to get his property for nothing.

Judgment affirmed.