## The State *against* Fasset.

Witnesses called to testify before a grand-jury, should be so sworn, that if their testimony is false, they may be indicted for perjury.

In this state, witnesses before a grand-jury, according to ancient and uniform

*New-Haven,*
*July,* 1844.

The State
*v.*
Fasset.

practice, are sworn, by a magistrate, in the grand-jury room, and not in court; and this is a lawful mode of administering the oath.

It is the policy of the law, in the furtherance of justice, that the preliminary inquiry before a grand-jury should be conducted *in secret.* No evidence, therefore, will be received, for the purpose of vitiating an indictment, either from the grand-jurors, or from the witnesses before them, or from any other person required by law to be present, as to the evidence given on such inquiry.

The party accused, however, may be present, during the examination of witnesses before the grand-jury.

In the preliminary inquiry before a grand-jury, the same nicety in regard to legal evidence, is not required, as in the trial of causes before a petit jury. *It seems,* therefore, that the admission by a grand-jury, of evidence not strictly legal, would not, if shewn, be, of course, a sufficient ground of quashing the indictment.

THIS was an indictment for an assault with intent to murder *John B. Dwight.*

At the term of the superior court in *October,* 1844, there was a motion to quash the indictment, on two grounds: 1st, because the witnesses, who testified before the grand-jury, were not sworn *in court,* but by a justice of the peace, in the grand-jury room, who was himself a member of the grand-jury; and 2dly, because the grand-jury received the testimony of several witnesses as to the declarations of the deceased, made not in presence of the accused, and when the deceased was not in a dying state; which declarations, the accused averred, were material, and calculated to influence the decision of the grand-jury. The attorney for the state claimed, that these objections, even if founded in truth, were not sufficient to lead the court to quash the indictment. He also objected to any evidence to prove what took place in the grand-jury room, from the grand-jurors or the witnesses.

The superior court reserved its opinion until the judges of this court could be consulted. The case was now brought before them for their advice.

*Kimberly,* (with whom was *C. A. Ingersoll,*) in support of the motion to quash, remarked, that the constitution of this state provides, that " no person shall be holden to answer for any crime, the punishment of which may be death or imprisonment for life, unless on a presentment or an indictment of a grand-jury;" (*art.* 1. *s.* 9.) and that the object of this provision was to afford, in cases involving such serious conse-

quences, additional security against malicious and unfounded accusation. The counsel then contended,

1. That to effect this object, the law has made the grand-jury not merely *accusers*, but *triers ;* and in finding a bill of indictment, they must act upon *legal evidence.*

In the first place, they are not at liberty to find an indictment upon their own knowledge.

Secondly, they are, like petit jurors, liable to be challenged for favour. 1 *Burr's Trial,* 38. 44. 1 *Chitt. Cr. L.* 309. n. 1 *Blackf.* 318. 390.

Thirdly, the accused has right to be present, and to confront the witnesses against him.

Fourthly, affidavits and depositions are not admissible evidence. *Rex* v. *Willet,* 6 *Term R.* 294. 1 *Chitt. Cr. L.* 319. *Davis' Prec. Ind.* 25.

Fifthly, the witnesses must be under oath or affirmation. *The United States* v. *Coolidge,* 2 *Gallis.* 364. *Russ. & Ry. Cr. Ca.* 401. 1 *Hawks,* 539.

Lastly, that no evidence can be received by the grand-jury, which would not be permitted to go to the petit jury, on the trial of the cause, was decided in *Pennsylvania,* in 1841, in the case of *The Commonwealth* v. *Biddle.*

2. That in this case, the declarations of the person assaulted, were clearly inadmissible.

In the first place, they were *hearsay* evidence.

Secondly, they were *material,* being likely to influence the minds of the grand-jurors. They showed the *intent* with which the blows were struck ; and such intent is of the essence of the offence charged.

3. That the irregularity complained of may be proved, either by the grand-jurors, or by the witnesses who gave the evidence.

In the first place, proof of the facts can, from the nature of the case, be derived from no other source ; and it is not to be supposed, that the law will lay down a rule, which can never be enforced.

Secondly, it is not a violation of the grand-juror's oath to give the evidence in question. The clause as to " the *secrets* of the cause," &c. does not refer to the examination of witnesses, when the accused is present before the grand-jury,

*New-Haven,*
*July, 1844.*

The State
*v.*
Fasset.

but to their consultations, deliberations, opinions and votes, among themselves, when they only are present.

Thirdly, in this state, however it may be elsewhere, the obligation of secrecy, imposed upon the grand-jury by their oath, is considered as limited to the time during which the subject is before them. 2 *Sw. Dig.* 371.

Fourthly, the rule in regard to petit jurors, is not applicable to grand-jurors. The terms of the oath in the two cases, are very different. The functions which they are respectively to perform, are also different.

Fifthly, the admission of the evidence in question is not opposed to public policy, in regard to either the grand-jurors or the witnesses. There is no reason for extending the rule of exclusion beyond the limit before-mentioned. It was not adopted lest the accused might learn that the investigation was going on, and so escape ; nor because the evidence, if known, might lead to subornation of perjury ; nor on account of any undue influence, which the accused might exercise over the jurors or the witnesses : for the accused always may be, and by our practice, always is, present, during the preliminary proceedings. 4 *Bla. Com.* 126. n. 18.

Sixthly, it is no misdemeanour in a witness or grand-juror to give or receive hearsay evidence. Neither is supposed to be acquainted with the technical rules of evidence. The grand-jury hear such witnesses as are sent to them ; and the witnesses testify what they know, or think they know.

Seventhly, the many cases in which the court has interfered and arrested the proceedings, for like irregularities, satisfactorily prove, that such evidence must be received. In *Low's* case, 4 *Greenl.* 439. the court permitted the foreman and two others of the grand-jury to testify, that less than twelve of the panel concurred in the finding. In the case of *The State* v. *Caine,* 1 *Hawks,* 352. the indictment was quashed, because one of the grand-jurors communicated information, not having taken the witness's oath. The grand-jurors alone could have known the fact. In *The United States* v. *Coolidge,* 2 *Gallis.* 367. the witness *Lee* was admitted to prove, that he had not been sworn ; and some one in the jury-room must have been called to prove that he gave evidence. In *The State* v. *Fellows,* 2 *Hayw.* 340. it was decided, that an indictment of forcible entry, found on the sole

testimony of an interested witness, ought to be quashed.
How was it, or could it be, proved, that he did testify? In
3 *Watts*, 56. 2 *Selw.* 260. it is said, a grand-juror may be
called to prove who was the prosecutor.

Eighthly, it is no valid objection that the practice may tend
to embarrass and delay the progress of criminal trials; and
that corrupt grand-jurors or witnesses may procure themselves
to be sent into the jury-room for the purpose of upsetting the
finding. This objection goes to the subversion of all techni-
cal rules adopted for the greater security of the citizen.
Why the intervention of a grand-jury at all? Why require
that twelve concur in the finding? Why should the petit
jury be unanimous, in order to convict? The effect of these
regulations may be greatly to delay and embarrass the pro-
gress of criminal justice. As to corruption, is there no dan-
ger on the other hand? May not grand-jurors and witnesses,
procure themselves to be sent into the jury-room, for the pur-
pose of false accusation? Such things have been done.
*Scarlet's* case, 12 *Co.* 98. And is there to be no remedy?
If not, the institution, which is the boasted security of the citi-
zen, is a mockery of justice; instead of a protection against
unfounded accusation, it is an engine of oppression—an odious
inquisition. Nor is it any answer, that the accused may
show his innocence before the petit jury. The ignominy of
the accusation rests upon him. The dangers of error and of
perjury are to be encountered; and the torture of suspense,
and the pains of imprisonment, are to be endured.

Finally, the grand-jurors are the officers of the court; the
court is the counsel of the accused, at least in this stage of
the proceeding; and if an irregularity has intervened, which
is seasonably brought to the knowledge of the court, by *affi-
davit* of the accused, or by suggestion of the attorney, the
court will instantly interpose, and, by inquiry of the jurors or
otherwise, ascertain the truth, and apply the proper remedy.

4. That the witnesses before the grand-jury must be sworn
*in court.* This is the undoubted rule of the common law.
When the grand-jury have retired, the parties bound to pros-
ecute and give evidence are called and sworn in court, and
sent before the grand-jury. 1 *Chitt. Cr. L.* 314. See also
6 *Car. & P.* 90. (25 *E. C. L.* 297, 8.) 1 *Hawks*, 539.
And where this rule is departed from, as in *Pennsylvania*, the

power of grand-jurors to administer oaths to witnesses, is conferred by express statute.    *Penn. Stat.* of 1826.

*R. I. Ingersoll,* (state's attorney,) contra, remarked, *in limine,* that on a motion to quash the indictment, it is *discretionary* with the court to allow the motion or not ; and courts usually refuse to quash, on the application of the accused, when the indictment is for a serious offence, except upon the clearest and plainest grounds, but will drive the party to a demurrer, or motion in arrest of judgment, or writ of error. 1 *Chitt. Cr. L.* 300.    *Archb.* 34, 5.    He then contended, 1. That the grand-jurors cannot be inquired of as to their own proceedings—more especially when, as here, the cause is still pending ; because it is the policy of the law that the preliminary inquiry as to the guilt or innocence of the party accused, should be secretly conducted ; and in furtherance of this object, every grand-juror is sworn to secrecy.    *Greenl. Ev.* 287, 8.    2 *Sw. Dig.* 371.    2 *Russ. Cr.* 616.    *Rosc. Cr. Ev.* 149.    *The State* v. *Hall, cor.* super. court, *Middlesex* county, 1844.    The principles recognized in *The State* v. *Freeman,* 5 *Conn. R.* 348. and *Clum* v. *Smith,* 5 *Hill,* 560. as to petit jurors, apply as forcibly to grand-jurors.

2. That if grand-jurors cannot disclose what takes place before them, it seems to follow, as a matter of course, that those whom they, in the discharge of their official duties, call before them, should not be permitted to disclose—though the latter are not, like the former, under an oath of secrecy ; because, as has been shown, it is the policy of the law, irrespective of the oath, that the preliminary proceedings regarding the guilt or innocence of the party accused, should be secretly conducted.    Hence it is, that their clerk, and the prosecuting officer, if present, though not sworn to secrecy, are included in the rule.    *Greenl. Ev.* 287, 8.    And any person who may be present on the occasion, is bound not to disclose what may transpire.    1 *Chitt. Cr. L.* 317.

3. That if the testimony, as detailed in the motion, was received by the grand-jury, and this may be shown, it is not a sufficient ground for quashing the indictment.    The grand-jury are sworn " diligently to inquire after" all breaches of the law, as well as to make " due presentment."    Now, they cannot discharge the first branch of their duty, unless a latitude

of inquiry is allowed them, in these preliminary proceedings, unconfined to the strict course laid down for the trial in chief. And although the grand-jury *may* require the same evidence in finding the indictment, as may be necessary to support it on the trial, yet they are not necessarily held to the same strictness. They often admit copies, where originals alone are evidence, and sometimes evidence by parol of that which should be proved by written documents. *Archb.* 33. It is a *non-sequitur* to say, that because Mr. *Dwight's* declarations were not made when he was in a dying state, they could not, therefore, under any circumstances, be received. Declarations made immediately after the injury, as to the cause of it, are received as original evidence, though not to identify the person who did it. *Greenl. Ev.* 115. *Rex* v. *Foster*, 6 *Car. & P.* 325. (25 *E. C. L.* 421.) *Regina* v. *Megson* & al. 9 *Car. & P.* 420. (38 *E. C. L.* 173.) In *Knapp's* case, 9 *Pick.* 495, 6. the court, on application of the prisoner's counsel, refused to instruct the grand-jury as to the kind of evidence they should receive, remarking, that if any thing improper should be given in evidence before them, the error might be corrected subsequently, upon the trial before the petit jury. The court said further: " There is a difficulty in determining before-hand what may, or may not, be proper; and it would be inconvenient to say the least, to instruct them on *hypothetical* cases." Now, if they could not be instructed before-hand, on hypothetical cases, how can the court here say, on this isolated testimony—a mere hypothetical case—that the evidence was not proper?

4. That the witnesses before the grand-jury were not improperly sworn. The objection taken to administering the oath to them in the grand-jury room, is opposed to the universal practice in this state, sanctioned, it is believed, by every judge who has presided at a trial where an indictment has been presented.

5. That if there had been an irregularity in the mode of administering the oath, it would not be a sufficient cause for the interposition of the court, by quashing the indictment. *Regina* v. *Russell*, 1 *Car. & M.* 247. (41 *E. C. L.* 139.)

WILLIAMS, Ch. J. As to the first objection, there is no doubt that the witnesses before the grand-jury should be

*New-Haven,*
July, 1844.

The State
*v.*
Fasset.

sworn, and in such a manner, that if the testimony was false, they might be indicted for perjury, as was ruled by Judge *Story,* in *The United States* v. *Coolidge,* 2 *Gallis.* 364. And where, after conviction, it was shown to the court, that the witnesses before the grand-jury were not sworn, the judges recommended the prisoner for a pardon. *Rex* v. *Dickinson, Russ. & Ry. Crown Cases,* 401. And so where the witnesses were sworn, by the proper officer, but on a day when the court was not open, *Parke* J. and others, sitting under a special commission, held, that the proceedings were irregular, and the witnesses could not be indicted for perjury. 6 *Car. & P.* 90. (25 *E. C. L.* 297, 8.) So in the prosecution against *Biddle* & al. Judge *Barton* held, that the proceedings were irregular, the witnesses not being sworn in open court, nor by the grand-jury themselves, in the manner prescribed by the statute ; and in that case, it is said, that the oath was extrajudicial, and the witnesses could not be indicted for perjury. *Nov.* 1841.

The practice in *England,* and in the courts of the *United States,* certainly is, that the witnesses should be sworn in open court ; growing probably out of the fact that formerly grand-juries met with the court, and the proceedings seem to have been carried on under the eye of the court. Nothing then was more natural than that, under such circumstances, the grand-jurors should be sworn by the officer of the court ; and this practice has been followed in many of the states.

By the laws of this state, a provision was early made, that every town should choose two or more sober, discreet persons, to serve as grand-jurors, to be sworn by the next assistant or justice of the peace, who were authorized to make presentments. They were to meet quarterly, or oftener, to inquire into breaches of the law ; to call witnesses before them for examination ; and if such persons, after being duly summoned, by warrant from an assistant or justice of the peace, refused to be examined on oath, such magistrate might commit them to gaol ; and the names of the persons so chosen were to be returned to the clerk of the county court ; from which number he was to summon the grand-jurors to serve at the county court. In 1784, the statute was altered so far that the superior and county courts might order a grand-jury from those chosen by the towns, or other sufficient freehold-

New-Haven,
July, 1844.

The State
v.
Fasset.

ers. *Stat.* of 1808. *pp.* 371. 373. Under these circumstances, it was very natural that the grand-jurors of the respective towns, when eighteen of them met together, at the call of the court, should pursue the same course as to the witnesses, as when met in their respective towns ; and that they should suppose that a justice of the peace might as well summon and swear the witnesses, as where a smaller number of grand-jurors had convened. Whether the practice originated from this circumstance, or whether it was thought more in accordance with the simplicity of our practice—the custom of administering the oath to the witnesses in the jury room, by a magistrate, has been uniform ; and so far as we are informed, no witness has ever been sworn in our courts, and sent to the grand-jury for examination.

A practice so ancient and so uniform, growing up under the eyes of the court, is certainly strong evidence of what is the law. If the law requires every witness examined by the grand-jury to be sworn in court,—is it possible, that when it must have been known almost necessarily to court and counsel, in the numerous cases in which indictments have been found, that witnesses were not sworn in court,—that no lawyer and no judge should have ever before doubted the legality of these indictments ? In mere matters of practice, our courts have not, in many instances, pursued the course of the *English* courts; and in this very case, had the clerk sworn these witnesses as it is claimed he should have done, we see not why an objection might not have been made that the crier ought to have done it, as it seems the practice is in *England*. 6 *Car. & P.* 90. (25 *E. C. L.* 298.)

The only substantial reason, which has been given in the case alluded to, is, that the witnesses could not be convicted of perjury. That would seem to depend upon the other question, whether the oath was lawfully administered ; for this court has decided, that where an oath was lawfully administered, in any proceeding in a course of justice, the witness who swore falsely, was guilty of perjury ;—as where a witness was sworn by a magistrate to testify before an arbitrator, or before an ecclesiastical tribunal ; (*Chapman* v. *Gillet,* 2 *Conn. R.* 40. *Lyman* v. *Wetmore, Id.* 42. n.) where a poor debtor swore falsely, under the oath provided for such cases. *Arden* v. *The State,* 11 *Conn. R.* 408.

New-Haven,
July, 1844.
───────
The State
v.
Fasset.

In *England* too, it has been said, by an able judge, that all that is required in an *affidavit*, as the foundation for a criminal information, is that which is required in every other case, that the *affidavit* be made in a judicial proceeding, when the party swears at the hazard of a prosecution for perjury, if it be false. Lord *Kenyon* then goes on to say, in that case, the *affidavit* was taken before a judge who had authority to administer an oath, and made in the course of a judicial proceeding, and relevant to a material point in issue. *The King* v. *Jolliffe*, 4 *Term R.* 291.

If these cases are regarded as law, we think this court would hold, that if these witnesses before the grand-jury swore falsely, they were guilty of perjury. And further, it seems now doubtful whether even in *Great-Britain* the courts would suffer the inquiry to be made whether the oath was regularly administered to the witnesses. In a recent case, the counsel suggested to the court, that it was doubtful whether the witnesses before the grand-jury had been properly sworn ; *Gurney*, B. and *Wightman*, J. held, that this was not a matter which they ought to inquire into, and that the mode of swearing the witnesses to go before the grand-jury, if incorrect, would not vitiate the indictment ; as the grand-jury were at liberty to find a bill upon their own knowledge merely, and were formerly continually in the habit of doing so. *Wightman*, J. added, that the same view of the subject had been taken by him and Lord *Denman*, in a case on the *Northern* circuit. *Regina* v. *Russell*, 1 *Car. & M.* 247. (41 *E. C. L.* 139.)

The court are satisfied that this objection ought not to prevail.

It is further urged, that the indictment shall be quashed because some of the witnesses were permitted to testify before the grand-jury to the declarations of the deceased as to the assault, when the accused was not present, and when Mr. *Dwight* was not in a dying state ; and this fact they offer to prove, by the grand-jurors themselves, and by the witnesses who were before the grand-jury.

On the part of the state, an objection was taken to this testimony, as it respects the testimony of the grand-jurors themselves. It has been settled, by this court, that petit jurors cannot be permitted to testify to facts occurring among them-

*New-Haven,*
July, 1844.

The State
*v.*
Fasset.

selves to impeach their verdict. It has been considered inconsistent with sound policy and as opening a door to the most pernicious acts. *The State* v. *Freeman*, 5 *Conn. R.* 348. *Mead* v. *Smith*, 16 *Conn. R.* 346. and the cases there cited, confirmed by the recent case of *Clum* v. *Smith*, 5 *Hills*, 560. It is said, that the testimony offered is not to prove misconduct in the jury, as was the case of *State* v. *Freeman*, but mere mistake. We do not understand that the principle applies merely to misconduct, but quite as much to mistake. It goes to this, that the jury-room is not to be open to these inquiries, whether they relate to the reasons of their opinion, or to the motives by which they were actuated. And we cannot see why the principles which governed the court, in the case of the petit jurors, is not equally applicable here. There are considerations which seem to make the objections stronger in case of the grand-jury than the petit jury. The injury to the party is of less magnitude, as this is a mere preliminary inquiry, by which the accused is put upon his trial ; and formerly this was done only upon probable cause shown. 2 *Hale's P. C.* 157. 1 *Chitt. Cr. L.* 318. In the other case, the decision is final, and fixes the fate of the party.

Again, it is the peculiar policy of the law, in the furtherance of justice, that this preliminary inquiry should be conducted in secret. The oath, therefore, which grand-jurors take, is entirely different from that of petit jurors, especially in criminal cases. In the latter, there is no allusion to the secrets of the cause ; and in civil causes, they are to speak nothing to any one, and to keep secret their verdict until they deliver it up in court. *Stat.* 485. (ed. 1838.) The grand-jury swear "the secrets of the cause, their own and their fellows, they will observe and keep." *Stat.* 484. The secrets of the cause must relate to the persons accused, the witnesses, who they are and what they testified. "Their own and their fellows secrets" must refer to the deliberations and the votes of the grand-jurors themselves. And it was very early decided, that a grand-juror should not be allowed to swear what was given in evidence before the grand-jury, because he is sworn not to reveal the secrets of his companions. *Clayt.* 84. 12 *Vin. Abr.* 20. *tit.* Evidence. H. 4. An exception to this may be found when a witness testifies differently on the trial before the petit jury, from what he did before the grand-

New-Haven,
July, 1844.

The State
v.
Fasset.

jury : then the grand-jury may be called to contradict him, on that trial, or on his trial for perjury ; (though this, it is said, has been denied.)   *Imlay* v. *Rogers,* 2 *Halst.* 347.   In *Pennsylvania*, it has also been held, that a grand-juror may prove who was the prosecutor ; but it is because it is not considered within his oath.   3 *Watts,* 260.   These cases rather tend to establish the general principle than to impair it.

*Scarlett's* case, however, is much relied upon.   That was an indictment on the *Stat.* of 11  *Hen.* 4. *c.* 9. for procuring himself to be sworn upon the grand-jury, with intent maliciously to indict his neighbours, &c ;  and in stating the case, Lord *Coke* gives a history of the facts which led to it—that at a sessions of the peace, *Scarlett* requested the sheriff to put him on the grand-inquest, which he refused to do ;  and notwithstanding, by confederating with the clerk, he was sworn, and of his malice, and upon his own knowledge, as he pretended, seventeen honest men were indicted upon divers penal laws.    And the reporter adds, some of the justices looking over the bills, demanded of them of the inquest, what evidence they had to find the said bills ;  and they answered, by the testimony of *Scarlett.* 12 *Co.* 98.   Here was no action of any judicial tribunal ;  but some of these justices of sessions, in the familiarity of ancient time, did ask the grand-jury upon what evidence they indicted these seventeen honest men. That was doubtless the case of persons indicted *per famam patriæ*—that is, common report.   In such cases, it became the judge, if he had any doubt or suspected the jury, to make strict examination into the matter, and ask the twelve how they learnt what they, in their verdict, declared concerning the persons indicted ;  and upon their answers, he might judge whether the charges were founded  in truth or malice. 2 *Reeve's Hist. Com. L.* 31. cites *Bract.* 143.   In this case, the party might be admitted to bring in his compurgators. In the case reported by  *Coke,* the grand-jury were not inquired of, nor was it necessary.   *Scarlett* was not indicted for what he did on the grand-jury ; but the gist of the indictment was, for fraudulently procuring himself placed upon the inquest, when in fact he was not returned.   This, with the fact that he acted with them, which was matter of public proof, was all that was necessary for his conviction ; and certainly the loose conversation of the court of sessions in a

process now unknown, cannot be an authority upon which this court can be called to act—more especially, as the case of *Scarlett* is never cited in support of such a claim.

Another case was also alluded to, where it was held, that if a bill was presented to the grand-jury, with the names of infamous witnesses *alone* endorsed thereon, on application to the court, the grand-jury would be told to reject it. 1 *Chitt. Cr. L.* 319. *Hawk. Pl. C. c.* 2. *s.* 28. *n.* 143. This case proves indeed, that no reliance is to be placed upon an infamous witness—in other words, that such person cannot be a witness; and if there be no other, a bill ought not to be found. But it does not bear upon the question whether grand-jurors might testify to facts before them. In the case put, the name of the witness appeared upon the bill alone; the fact of his infamy must have been derived from other sources; it could be proved only by the record. The case, therefore, has no application to the obligation of secrecy imposed by the oath of a grand-juror.

Formerly, if a grand-juror disclosed to a person accused the evidence before them in his case, he became accessary to the crime, if it was felony, and a principal, if it was treason; and now it is a high misdemeanour. 4 *Bl. Com.* 126. 1 *Chitt. Cr. L.* 317. To be sure, the offence of communication to a third person, might not be as great; but as in this way it might reach the accused, it was an offence. It is said, this was to prevent knowledge of these facts reaching the ears of a person accused, lest he should flee, or suborn witnesses, or interfere in some improper manner with the witnesses against him, and as by our law the accused may be present at the hearing, he has all this knowledge. It is true, that by the liberality of our practice, a prisoner may be present during the examination of witnesses before the grand-jury. But our constitution, and the oath of the grand-jury recognize presentments, as well as indictments by the grand-jury, in which case the accused would not be present; and the accused is never present at the deliberations of the grand-jury; of course, cannot know individual opinions. And one important reason for this secrecy, is, to secure freedom of opinion and deliberation among the grand-jurors themselves. *McClellan* v. *Richardson,* 1 *Shep.* 82. And so long as the present oath is taken, the same secrecy is required as to the secrets of the cause,

as is required in relation to the secrets of the jurors themselves.

Again the elementary writers all speak of secrecy as not only consistent with, but essential to, the nature of the institution. *Davis Prec. Ind.* 12. cites *Hale's P. C.* 161. 4 *Bla. Com.* by *Christian, n.* 6. *Greenleaf* says, it is the policy of the law, that these proceedings should be private. *Greenl. Evid.* 287. *Swift* says, nor ought grand-jurors themselves to disclose their proceedings, or the testimony given before them ; though he thinks this is not regarded in practice in this state. 2 *Sw. Dig.* 371. In *Massachusetts* it is also said to be too often disregarded, rather from inattention than design. *Davis Prec. Ind.* These authors are here stating facts, not law. The court is to determine what is the law.

It is said, however, that this secrecy is confined to the time the case is under consideration. The books speak no such language. *Roscoe* says, the grand-jury are bound upon oath not to disclose the matters which pass before them ; yet they may be called to prove who was the prosecutor. *Rosc. Cr. Evid.* 149 ; and *Davis*, who filled the place of solicitor-general in *Massachusetts*, for thirty years, with great ability, says, that it is a principle constantly given in charges to the grand-jury, that the obligation of secrecy is perpetual, and that a grand-juror cannot be absolved from it, at any period of his life ; and nothing, he adds, can be more rational or salutary than the principle. *Davis Prec. Ind.* 13, 14, 16. And it is now incorporated in the revised statutes of that state, *p.* 738. *chap.* 136. *sec.* 13. We do not feel authorized to change the construction of the oath, because some parts of its provisions may seem less important. The same general objects remain, and the oath remains, and if it needs modification, this is not the tribunal for that purpose. We think, therefore, the grand-jurors cannot testify to the facts stated.

It is said, however, that others who were present, and have not taken this oath, the witnesses called there, may testify, although the grand-jurors may not. Such a practice would nullify the rule. If it be the object of the law to keep secret the proceedings before the grand-jury, it is necesssry that the law should impose silence upon those whom it has compelled to be before them. If it intends they shall be public, then the doors of the grand-jury room, as well as of the court-

OF THE STATE OF CONNECTICUT.

room, should be open to all. If others called there by the law, may testify to what took place within those walls, it would be idle to close the mouths of the grand-jury : they might suffer from the misunderstanding or the misapprehension of witnesses ; and hard indeed would be their case, if they could not contradict them, as has been decided by two of the Judges of this court, in *Hall's* case, *Middlesex, February* term, 1844. And at a very early period, it was decided, that the clerk of a grand-jury could not be compelled to testify what took place before that body.   12 *Vin. Abr.* 38. *tit.* Evidence. B.   And the rule, as laid down in the best authorities, is, that any person who may be present on the occasion, is bound not to disclose what may transpire.   1 *Chitt. Cr. Law*, 317. *Rosc. Cr. Ev.* 148.   In conformity with this, the courts of *Maine* held, that the state's attorney, when present with the grand-jury, could not be called upon for that purpose.   *McClellan* v. *Richardson*, 1 *Shepl.* 82.   And we can have no hesitation in saying, that the principle which would prevent disclosure by a grand-juror, must extend to all persons required by law to be present ; for such persons are all equally interested in the administration of the penal law.   *Greenl. Ev.* 288.   They are not permitted to disclose who agreed to find the bill of indictment, or who did not agree ; nor to detail the evidence on which the accusation was founded.   *Sykes* v. *Dunbar, Selw. N. P.* 815.   [1059.]   *Huidekoper* v. *Cotton*, 3 *Watts*, 56. We are of opinion, therefore, that the testimony offered to prove the facts alleged in the motion, was not admissible.

There are also objections arising from the nature of the evidence itself, as well as the situation of the witnesses.   It is said, the grand-jury are to hear only legal testimony, and can hear no other.   Would this rule extend to informations by single grand-jurors or state's attorneys, and to a binding over by a single magistrate ?   This last, we have high authority for saying, is analogous to an enquiry before a grand-jury :  per *Bayley*, J. in *Cox* v. *Coleridge*, 1 *B. & Cr.* 37. (8 *E. C. L.* 23.)   In these cases, the same nicety is not required as in cases before a petit jury in court.   The grand-jury, if the case is difficult, may ask the advice of the court ; (1 *Chitt. Cr. L.* 313.) yet a request by the accused, that the court will instruct the jury as to the evidence they shall hear, will not, as a matter of course, be complied with.   The request was made

in *Burr's* trial, and seems finally to have been in vain. *Vol.* 1. *pp.* 172, 174, 177. And in reference to the case of the murderers of *White,* where a motion of this kind was made, *Parker,* Ch. J. said: "According to my recollection, this is the first attempt of the kind in this commonwealth. It is to be presumed, that only proper evidence will be laid before the grand-jury. If any thing improper shall be given in evidence, before the grand-jury, the error may be corrected subsequently, in the trial before the petit-jury;" and he refused the motion. 9 *Pick.* 495. If bills of indictment are to be quashed, because the grand-jury have admitted, or permitted some evidence to be given not strictly legal, and this could be enquired of, few cases of importance would occur in which these questions would not arise preliminary to the trial. For even in trials before the courts, questions of evidence are continually arising, about which counsel differ, and sometimes judges differ. And when we consider that grand-jurors are not generally selected on account of their legal acquirements, we may reasonably suppose, that they might often admit evidence not strictly legal, which, however, would have very little influence on the cause. If the courts are to enquire into their proceedings, and are to quash indictments, whenever such testimony is heard, whether called for or not, and whether material or not, few indictments would come to trial without this preliminary process. In such cases, would it be the duty of the court to quash every indictment where illegal evidence had been given? Or must they enquire whether it was material; and if material, whether there was not evidence sufficient without it? These, and many other questions of this character, would be constantly arising. And had such a course of practice as is now sought to be established, been known to courts of justice, the books would have been full of cases arising under it, and long ere this, a course of precedents would have marked out a path for us to take. On the other hand, there is hardly a case to be found upon the subject. In *Burr's* trial, on motion to instruct the jury as to the evidence, the *United States'* attorney, in reply, said, the grand-jury may refuse any instructions; and in that case, how can they be controuled by the court? What would avail the recommendation of the court; (for in fact it would be no more;) and if they should find according to their own opinion, and in

the old way, how could the court know of this variation, and how could they rectify it? *Vol*. 1. *p*. 176. There are very few cases to be found in the *English* books, where any allusion has been made to such a practice; and can it be, that amidst the intense interest excited by the trials of many great and distinguished men, whose lives were at stake, so few questions of this kind should ever have been made, if any such practice was known in the *English* law? In Dr. *Dodd's* case, his counsel did indeed submit to the court, that the indictment had been found on improper evidence, because one *Robertson*, who was in custody as a principal in the offence, had been illegally carried before, and examined by, the grand-jury, without having been admitted as a witness for the crown. There, *Robertson's* name was on the bill as a witness for the crown, so that no question arose as to the source of the testimony. But the court held, that it was a matter in which the accused had no concern. *Leach's Cr. L.* 159.

Information by single prosecuting officers are filed, whenever, in the discretion of such officers, the public interest requires it, and upon such evidence as such officer is satisfied calls for their action. Indictments by a grand-jury (which are required in cases of an aggravated character) are guarded with more care, and the accused cannot be brought to trial but by the concurrence of twelve of his fellow citizens acting under the general supervision of the court, who, according to the humane notions of modern times, will direct them not to find a bill, unless they would convict upon the same evidence: and they are also sworn to prosecute no one from hatred, malice or envy, and but to present cases truly.

Thus shielded, it is presumed, that very few instances will occur, where one who is free from guilt, will be indicted. The probability, at least, is greatly diminished from what it would be, if left to the discretion of a single individual; and if a mistake should occur, the evil consequences would not extend beyond a trial before an impartial jury, where such errors might be corrected.

How it might be, if the charge against the grand-jury was, that some of their number had been corrupted by bribes, or intimidated by threats, we need not decide. The court might perhaps do as was done in the case cited from 4 *Greenleaf*, where the foreman, by mistake, endorsed " a true bill," instead

*New-Haven,*
*July, 1844.*

The State
*v.*
Fasset.

of "*not* a true bill." In cases of such character, we are not about to decide, that the court, in the exercise of a sound discretion, might not say, that a trial should not proceed. This is not a case of that character ; nor has any case been presented to us, which will warrant us in setting aside this indictment.

The superior court are, therefore, advised not to quash it.

In this opinion the other Judges concurred.

*Motion overruled.*